PENOBSCOT RAILROAD COMPANY *versus* DANIEL WHITE.

When the charter of a corporation requires notice of the time and place for opening books of subscription to the capital stock to be given under the direction of the persons named in the first section of the Act, a majority of the persons thus named, and less than the whole, may lawfully give such notice.

When the corporation has been regularly organized and the proceedings entered of record, the shares subscribed for are recognized as shares of its stock and the subscribers therefor as corporators.

The records of the corporation are then competent and sufficient evidence of who are the corporators, and of the number of shares held by each, unless proof be introduced to destroy their effect.

In an action by a railroad corporation to recover assessments, made for the general and legitimate purposes of the corporation, it is not necessary for the plaintiffs to show a compliance with the provision of its charter requiring that the company shall not engage in, nor commence the construction of any section or sections of the road until seventy-five per cent. of the estimated cost thereof shall have been subscribed for by responsible persons.

The right to make such assessments cannot be made to depend upon any actual indebtedness existing at the time, nor can it be defeated by any apparent indebtedness incurred under an invalid contract.

Prior to the organization of the corporation, the defendant by his subscription agreed to become the holder of twenty-five shares in the capital stock, upon the condition that not less than the least sum required by the charter should be subscribed. — *Held,* that it was not competent for a subscriber to show, that the shares subscribed for and recorded in the books of the corporation were subscribed for by persons of no actual pecuniary responsibility, and reputed not to be responsible for the amount subscribed for by them, with the qualification, however, that the defendant might introduce *any* testimony tending to show that the subscriptions were not made in good faith.

From the nature of the contract of subscription it must have been contemplated that the shareholders or corporators should determine who were apparently responsible as subscribers, and when they did so in good faith, the subscribers to the stock must be regarded as bound by such decision.

The declarations of a subscriber, made long after the organization, in relation to his subscription, are not admissible to show that the corporators did not act in good faith in receiving such subscription.

If there is not evidence in a case sufficient to authorize a jury to find the fact upon which a request for instruction is based, the Judge presiding is not bound to give the instruction requested, whether in itself correct or not.

It is immaterial with what motives and under what circumstances the defendant acted in signing a paper calling and in attending a meeting of the directors at which certain assessments were made; and evidence offered upon these points was therefore properly excluded.

Penobscot Railroad Company *v.* White.

On Report from *Nisi Prius,* Appleton, J., presiding.

Assumpsit for fifteen assessments of five dollars each, on twenty-five shares in the capital stock of the Penobscot Rail- road Company.

An original subscription book, containing the printed terms of subscription, was introduced. That portion of it important to the understanding of this case, is as follows:—" 4th. The corporation may be organized when one thousand shares shall have been subscribed, but said company shall not engage in nor commence the construction of any section or sections of said Railway, until seventy-five per centum of the estimated cost of said section or sections shall have been subscribed for by responsible persons."

The charter is found among the special Acts of 1847, ap- proved August 2, and the additional Act, referred to in the opinion of the Court, was approved August 21, 1850.

The other facts of the case appear in the opinion of the Court.

*Kent,* for defendant.

1. The notice that books of subscription would be opened, was subscribed by twelve only of the sixteen persons named in the charter. Where a statute requires an act to be done by certain individuals, not a board, it must be done by all, and not a majority merely.

2. The proof of actual subscriptions to the amount requir- ed, rests upon the recorded vote of the corporators. Is this sufficient? It is but the declaration, by parties themselves, that a condition precedent has been performed by them. Especially, (whatever other effect such a record may have,) can such an *ex parte* declaration be proof for plaintiffs in an action to recover an assessment? Can a bank so prove its capital stock paid in?

In *Dummer's case,* 40 Maine, 172, the Court considered the objections there made to certain subscriptions were not sus- tained. The point now made was not decided in that case. What was said about the records was uncalled for.

3. The recital in the notice calling a meeting for organization, signed by defendant, that 1210 shares had been subscribed, was an official act, and does not bind him as an individual. *Walker's case*, 10 Mass. 390; *Middlesex Turnpike Co.* v. *Swan*, 10 Mass. 384; *same* v. *Locke*, 8 Mass. 268.

4. But the Judge not only gave this effect to the records, but he refused to admit evidence, that the subscribers for 500 shares, were neither by repute nor actually responsible for the amount subscribed. The charter intends to require that responsible subscribers shall not be called upon until the one thousand shares are filled by responsible men. Otherwise the requirement is of no value. *Salem Mill Dam Co.* v. *Ropes*, 6 Pick. 23; *same case*, 9 Pick. 187.

5. As to the testimony in regard to the circumstances under which the defendant attended the meeting at which assessments were laid, the facts put in by plaintiffs derive their whole force from certain acts of defendant. The extent and force of those acts depend upon the circumstances under which they were done. If the act was merely a formal one, or defendant was misled, he ought to be permitted to show it. Greenl. Ev., § § 52, 53.

6. One of the most important questions arising in the case, is that touching the construction of the third section of the additional Act of Aug. 20, 1850.

· The presiding Judge ruled, that considering the proof sufficient to establish that 1210 shares had been subscribed, the right to make assessments to the full amount of $100, on each share, was perfect and complete.

It is contended, that the object of the provision in question, was to prevent the collection of assessments until the seventy-five per cent. is obtained. It is a restriction upon the grant of power to the company, and not an enlargement. It is in the additional act, which increases the possible number of shares to 6000, but does not increase the *minimum* number, 1000. Instead of changing that number, this guard of the 3d section was introduced.

Penobscot Railroad Company *v.* White.

This company have violated this section in every particular.

The basis of the right to assess, is clearly the right to expend in the construction of the road. The illegal contract is no basis. Can the directors, admitting that no money can be expended upon the construction, go on and assess for the general purposes of the company, in anticipation that possibly, at some future day, the subscription may be filled up? *The directors have no right to assess for general purposes, unless they have a right to use the money.*

*Wilson* and *Rowe & Bartlett,* for plaintiffs.

1. It is admitted that the requisite number of shares were subscribed; but it is said they are, some of them, shown not to be *responsible.*

Does the charter require a guaranty, that every subscriber should be, beyond doubt, at all times able to pay assessments?

There is nothing in the charter making such a requisition.

There is no analogy between this case and the cases in 6 Pick. 23, and 10 Pick. 142.

2. If duly organized, the company could lawfully assess; if they could lawfully assess, they could lawfully collect.

3. But defendant relies upon § 3d of the additional Act of 1850.

Suppose, for the sake of the argument, the company could not commence construction until seventy-five per cent. was subscribed by responsible persons, might not the company have occasion to assess for other purposes besides construction? There is the survey and location, and other preparatory steps. How can the "estimated cost of said section or sections" be made?

Plaintiff may be enjoined not to do a certain act; but it does not follow, that his dereliction in matters *subsequent* is to operate a failure of *conditions precedent.* The directors may, in such case, be liable, but defendant still is liable to the company.

If the subscription can be invalidated by conditions subsequent, the company might make the assessment, collect the money, and spend it, and then what would be the subscribers'

remedy?   7 Met. 276; *Day* v. *Stetson,* 8 Maine, 371; *C. Ass.* v. *Baldwin,* 1 Met. 359, at 364; *Meadow Dam* v. *Gray,* 30 Maine, 551; 2 J. J. Marshall, 264; *Brigham* v. *Shattuck,* 10 Pick. 306, at 309.

The attention of the Court is called to all the terms of the subscription.  The 1st, 2d, 3d and 5th provisions are all conditions precedent, as much as the 4th, but the duties and rights are subsequent in all, and of necessity must be so.

In other words, most of the terms are inserted in the subscription; but no defence on this ground was ever made.

Parol testimony as to conditions and matters of record, is inadmissible.  34 Maine, 369; Ib., 360, 366.

The offers of defendant to show fraud were a mere pretence.  The Court allowed the fullest latitude to defendant, in this respect.

If there was fraud, the defendant was himself *particeps criminis.*

This whole question was argued last year and settled in the case *Oldtown & Lincoln R. R.* v. *Veazie;* and more especially in the case of *these plaintiffs* v. *Dummer,* 40 Maine, 172.  The attention of the Court is especially called to the language of the Court in the last named case.

MAY, J.——The first objection urged in defence of this action is, that the notice, that books of subscription to the capital stock would be opened at different places, was signed by only twelve persons, being not all, but a majority of the persons named in the first section of the plaintiffs' charter.  The third section of the charter provides that such books shall be opened under *the direction* of the persons named in section 1, and that public notice shall be given, thereof, in some newspaper printed in Bangor and Boston.  It is not denied that the proper notice was given if the signatures thereto were sufficient. There is nothing in the charter requiring such notice to be signed by all the persons named therein.  The fact that the corporators acted upon it, and the defendant among them, so as to organize the corporation, sufficiently shows that it was

given under their direction. The provision in the charter, section 3, that if the subscription " shall exceed four thousand shares, the same shall be distributed among all the subscribers according to such regulations, *as the persons having charge of the opening of the subscription books* shall prescribe before the opening of said books," would seem to indicate that the corporators had authority in this matter of subscription, to act through committees to whom their power might properly be delegated. The doings of the corporators, therefore, in fixing the time and the terms of the subscription, and the notice of the appointment of a committee for that purpose, of whom the defendant was an acting member, are without legal objection.

2. It is next objected that the one thousand shares, required to be subscribed for by the third section of the charter, as amended by the Act of 1850, § 1, before any organization could take place, were not legally proved to have been so subscribed for, and that, for that reason, the organization relied upon by the plaintiffs, and the subsequent assessments upon the shares, were unauthorized and void.

It appears from the records of the corporation, that at a meeting of the subscribers to the stock, held May 3, 1851, for the purpose of organizing said company, a committee was chosen to ascertain and report whether a sufficient number of shares had been subscribed, to authorize an organization, which committee reported that 1210 shares had been subscribed in said capital stock, being more than 1000 shares, the number required by the charter; and at the same time said committee also reported a list of the subscribers, their several places of residence, and the number of shares subscribed by each; which report was duly accepted, and the corporation was, thereupon, organized; a code of By-laws was adopted, and a board of directors chosen, of whom the defendant was one; in which office he acted, having been subsequently appointed upon a committee of the directors to negotiate a contract for the construction of the road.

In the case of these plaintiffs v. *Dummer,* 40 Maine, 172,

the Court say " that when the corporation was organized, the shares subscribed for were recognized as shares of its stock, and the subscribers thereof as corporators. This was sufficient to complete the contract." The contract in that case. was that of subscription, and precisely like that of the defendant in this case. In the present case the presiding Judge at the trial, ruled that the fact that 1000 shares had been subscribed as required by the charter and the terms of subscription, was sufficiently established by the evidence. In the case of these plaintiffs v. *Dummer*, just cited, the Court further say, that " when a corporation has proceeded regularly to ascertain its corporators, and the owners of shares in its capital stock, and has entered them in its records, all parties become thereby *prima facie* entitled to the rights thus secured to them. The records are *competent* and sufficient evidence of them, unless proof be introduced to destroy their effect." It is not denied, but that it appears from the records of the corporation in this case, that all this had been done, and as no contrary proof at this stage of the case had been offered, the ruling of the Judge upon this point is found to be correct.

3. It is next urged that this action cannot be maintained for the assessments, unless the plaintiffs first show a compliance with the terms of the third section of the Act of August 20, 1850, and that seventy-five per cent. of the estimated cost had been subscribed for by responsible persons, as therein specified. By this section, it is provided that the company shall not engage in, nor commence the construction of any section or sections of the railway, until that amount of the estimated cost of such section or sections is so subscribed. A like provision is somewhat considered in *Boston & Providence R. R. Co.* v. *Midland R. R. Co. & al.* 1 Gray, 368. This provision does not seem to have any connection with the organization of the company; nor to take from them the power of making assessments, as conferred by their charter, when deemed necessary, however much it ought to influence them, in deciding upon the question of the expediency of making such assessments. It is undoubtedly true, as is

contended by the able counsel in defence, that the right to assess money upon corporators depends upon the right to use it when assessed and paid; but the right to use it may, without doubt, exist, notwithstanding there is no actual indebtedness on the part of the corporation existing at the time when the assessment is made. It may be, and often is expedient to make assessments, in view of anticipated liabilities, to be subsequently incurred in the prosecution of the general purposes for which the corporation was created; but it may be questioned, whether it would not generally be much wiser, and would not better promote the pecuniary interests of such corporations, to postpone the making of their contracts until a solvent treasury should insure the prompt performance of them on their part. Contractors, then, would have no occasion to exact exorbitant prices, because of the uncertainty of their being promptly paid, if paid at all. But whether expedient or not to assess moneys, in anticipation of liabilities to be subsequently created, there can, in our judgment, be no doubt of the existence of the power in the plaintiff corporation to make such assessments, and if rightfully made, we know of no authority, and none has been cited, tending to show that such assessments, even though the money should be subsequently misappropriated by the corporation or its agents, would be void; nor can we perceive any reason why such assessments, if made to raise money for the general but legitimate purposes of the corporation, when the corporation, through its directors, had made contracts for the execution of those purposes, should be void, even though it might subsequently turn out that such contracts were invalid, for want of authority in the directors to make them. In such a case the enterprise itself is lawful, being the very one for which the corporation was created; but the mode adopted for its completion is unlawful, being unauthorized by the charter. The moneys are assessed for the legitimate objects of the charter, but the contracts to secure the accomplishment of those objects are invalid. Such contracts may be avoided, and the moneys raised, may, notwithstanding, be appropriated

in conformity with the charter for the very purposes for which
the corporation was created.   It is, therefore, apparent that
the right to make assessments cannot be made to depend
upon any actual indebtedness existing at the time, nor de-
feated by any apparent indebtedness incurred under a con-
tract which was void.   It ought, perhaps, rather to be pre-
sumed that the corporation will effect the purposes of its char-
ter in some legal way, and that the moneys assessed will be
invested for that purpose.   The corporation therefore are
not bound to show a compliance with § 3, of the statute of
1850, before this suit for the recovery of assessments can be
maintained.

It is said by the counsel for the defendant, that this section
imposing a limitation upon the powers of the corporation,
was inserted in the Act of 1850, for the purpose of protect-
ing the subscribers to the stock from unwise appropriations
of their money.   It may be so, but if so, the subscribers,
when they find the corporation of which they are members, or
its agents, misappropriating their money, must find a remedy
in some other mode than that which is sought and relied upon
in this case.   No error is found in the ruling upon this point.

4. The defendant, assuming the burden of proof, next offer-
ed to prove that the requirements of said section 3, in the
Act of 1850, had not been complied with, which testimony
was excluded.   The fact, for the reasons before stated, being
immaterial, such evidence was rightly rejected.

5. Proof was next offered by the defendant, that of the
1210 shares subscribed for, and recorded in the books of
the corporation as before stated, at least 500 shares were
subscribed for by persons not actually pecuniarily responsible
therefor, and who were not reputed to be responsible for the
amount for which they subscribed.   Testimony for this pur-
pose was excluded, subject, however, to the qualification, that
the defendant might offer *any* evidence tending to show, that
these subscriptions were not made in good faith, and upon
this point the defendant put in such testimony as he chose.
·Prior to the organization of the corporation, the defendant,

by his subscription, agreed to become the holder of twenty-five shares in the capital stock, upon the condition that not less than the least sum required by the charter should be subscribed; and it cannot be doubted that before he can be held to such subscription, it must appear that such condition has been performed. It is said, however, by the Court in the case of these plaintiffs v. *Dummer*, before cited, that "if the company obtain subscriptions to the amount required, in good faith, from persons apparently able to pay or to procure others to pay for the shares, it could not have been the intention to render its proceedings illegal and void, if those subscriptions should finally prove to be of little value." The charter must receive a reasonable construction, if its language will allow it, and there can be no doubt that it requires good faith of the corporation in the exercise of its rights and the performance of its duties.

If the corporation should, for the purpose of making up the amount of stock required before an organization, accept a list of subscribers as share holders, which was composed in part of idiots and town paupers, as suggested by the counsel in defence, such a subscription would not be a compliance with the provisions of the charter; but if, on the other hand, the list *appeared* to the company to consist of names which might be relied on for the fulfillment of the subscription, they would be justified in proceeding to organize, and their proceedings would be valid, even though it might subsequently be made to appear that some of the subscribers at the time were not of sufficient pecuniary responsibility to pay for their stock, and were not reputed to be so, provided the corporation acted in good faith on their part in the acceptance of such list. From the very nature of the contract of subscription, it must have been within the contemplation of the parties, that the share holders, or corporators, should determine who were apparently responsible as subscribers, and when they had done so in good faith, the subscribers to the stock must be regarded as bound by such decision. The reputation or fact of pecuniary inability, could at most only be evidence upon the

question of good faith, and for that purpose the defendant was permitted to prove them if he desired.

6. It is insisted, that the evidence offered upon the question of good faith, was sufficient to authorize the jury to find that the subscription of Gideon Mayo was colorable and fraudulent, and that the plaintiffs did not act in good faith in accepting it. The case shows that the testimony upon this point consists in the declarations of said Mayo, in relation to his subscription, made at a meeting of the stockholders long after the corporation had been organized. Such declarations were not legally admissible upon the question whether the corporation acted in good faith at the time of its organization. The defendant himself testifies, that he thinks these declarations were made at some meeting after the assessments had been made. The Judge was requested to instruct the jury that, if Mayo's subscription was not *bona fide*, but colorable, and made in fraud or evasion of the charter, it could not be regarded as a compliance with that provision of the charter, which required that at least 1000 shares should be subscribed for before any organization could take place. Whereupon, the Judge stated, that he should instruct the jury that if they believed the evidence, the subscription made by Mayo was binding upon him, and the plaintiffs' evidence, if believed, was sufficient to entitle them to recover. Both these propositions, in the judgment of the Court, are correct. No opinion was expressed by the Judge in regard to the requested instruction, probably because he regarded the evidence in the case, as insufficient to authorize the jury to find the fact on which the request was based; nor does this Court perceive any sufficient evidence to justify the jury in finding such fact. If the counsel for the defendant thought otherwise, he had the right to have insisted upon the requested instruction, and if given, to have submitted the evidence upon that question to the jury. He did not choose to do so, and may, therefore, properly be regarded as acquiescing in the opinion of the Judge, as to the effect and weight of the evidence. As no ruling was given in pursuance of said request, there being no

evidence to require it, we are not called upon to determine whether the proposition contained in the request, is in conformity to the law in such a case, or not.

7. The questions proposed to the defendant by his counsel, with a view to ascertain the circumstances under which he acted in attending the meeting of the directors, held Nov. 26, 1852, when certain assessments were made, and in signing a paper calling that meeting, and which were not admitted by the Judge at the trial, may be regarded as rightly excluded, because it was immaterial with what motives or under what circumstances he acted, in those particulars. Nothing which was done at that meeting, had any tendency to throw light upon the question of the legality of the organization, or the right of the plaintiffs to make assessments upon the stock. These had been perfected long before, and the assessments might have been lawfully made, for aught that appears, without his presence.

In view of all the evidence in the case, we perceive nothing erroneous in the orders, rulings and opinions of the Judge who presided at the trial, and concur with him that if the whole evidence in the case is believed, this action is maintained. The default, therefore, in accordance with the agreement of the parties, must stand.

TENNEY, C. J., and HATHAWAY, J., concurred in the result. APPLETON and GOODENOW, J. J., concurred.