## ATHENS APARTMENT CORPORATION *et al. v.* HILL.

1. When upon the call of a case for trial, the plaintiff not appearing and counsel for the defendants moving to dismiss the case for want of prosecution, the trial judge announced orally that the case was dismissed for want of prosecution, struck the same from the trial calendar, and made a pencil entry on such calendar that the case was dismissed for want of prosecution, but no order was taken dismissing the case, and said pencil entry of dismissal was not placed on the minutes of the court, these proceedings, without more, were insufficient to accomplish the dismissal of the suit during the term at which said proceedings took place.

(a) During the term at which a judgment is rendered the court has authority on its own motion to vacate the same for irregularity, or because it was improvidently or inadvertently entered.

(b) When, at the next term after the proceedings mentioned in the first headnote were had, the court passed an order dismissing the case for want of prosecution, and on the next day passed an order reinstating the case and placed it on the calendar for trial, the court had authority to pass said order without any formal motion being made by the plaintiff for the reinstatement of the case, and without notice to the defendants or their counsel.

(c) The order of reinstatement is evidence of the improper dismissal of the case and of the propriety of its reinstatement; and the court did not abuse its discretion in reinstating the case.

2. Persons who organize a corporation and transact business in its name before the minimum capital stock has been subscribed are liable to creditors to make good the minimum capital stock with interest.

(a) In determining whether the minimum capital stock in a corporation has been subscribed, only bona fide subscriptions should be counted; and colorable and illusory subscriptions, and conditional subscriptions, unless the conditions have been performed and the sub-

scriptions thus made absolute before the persons organizing such corporation begin business in its name, should be rejected.

(*b*) The jury were authorized to find that the minimum capital stock had not been subscribed when the defendants began to transact business in its name.

3. If at the time credit was extended the creditor knew that the requisite amount of capital stock had not been subscribed, he would not have been misled, and as to him the persons organizing the corporation and transacting business in its name would not be estopped from pleading such knowledge as a defense to a suit brought under section 2220 of the Civil Code. We can not say that a verdict finding that the plaintiff had such knowledge was demanded; and there being some evidence to support it on this point, the verdict will not be disturbed.

No. 3497. September 24, 1923.

Equitable petition. Before Judge Ellis. Fulton superior court. September 21, 1922.

This case was placed on the calendar of Fulton superior court for trial on Nov. 3, 1921. It was not reached on that date; but was called in its regular order for trial on Nov. 4, 1921. On the latter date, no one appearing for the plaintiff, counsel for the defendants moved to dismiss the case for want of prosecution. The court orally announced that the case was dismissed for want of prosecution, struck the same from the trial calendar, and placed upon the calendar opposite the case this pencil memorandum: "Dismissed for want of prosecution. Nov. 4, 1921." No order was taken dismissing the case, and the above entry was not placed on the minutes of the court. An order dismissing the case was written out on the declaration by counsel for the defendants, but it was not signed by the judge. These proceedings took place during the September term, 1921, of the court. On Nov. 8, 1921, the court signed an order dismissing the case for want of prosecution. On Nov. 9, 1921, the court, without written motion to reinstate the case and without notice to the defendants or their counsel, passed an order reinstating the case. On Nov. 17, 1921, the defendants filed a motion to set aside and vacate the order reinstating the case, on the grounds: (1) that the order reinstating the case was granted at a term subsequent to the one during which said order dismissing the case for want of prosecution was granted, and without notice to the defendants and an opportunity to resist the same; (2) that the plaintiff did not file any motion to reinstate said case during the September term, 1921, of the court, nor did he file one during the November term, 1921; (3) that after the

order dismissing the case was granted, they discharged all their witnesses, released funds which were tied up in garnishment proceedings, and said order reinstating said case, if allowed to stand, would injure them irreparably; and (4) that the court was without authority to grant said order reinstating said case without a motion having been made by the plaintiff therefor and without notice to their counsel. The court overruled the motion to vacate, and to this ruling defendants excepted pendente lite, and error is assigned thereon in this court.

The Athens Apartment corporation, on the petition of Harold C. McKenzie, Thomas H. Scott, and Eugene Anderson, was incorporated in Clarke superior court on April 29, 1920. The minimum capital stock was fixed at $125,000, consisting of 1000 shares of preferred stock and 250 shares of common stock of the par value of $100. On May 3, 1920, Harold C. McKenzie subscribed for 125 shares of common stock, and agreed to pay for the same by transferring to the company a certain agreement entered into by the Georgia Development Company and himself on Feb. 21, 1921, and to convey to the company the real estate described in said contract in accordance with its terms. Said contract was attached to his subscription. This contract recited that the Georgia Development Co. owned the Milledge Park subdivision in Athens, and that it was to its interest to have an apartment house erected on one or more of the lots thereof, as the value of remaining lots would be greatly enhanced. In consideration of the above and of the agreement of Harold C. McKenzie to organize a stock company to be known as the Athens Apartment Corporation, the purpose and business thereof to be the assumption of this agreement and to erect an apartment house on the property described, the Georgia Development Co. agreed to convey to the Athens Apartment Corporation, when the same was incorporated and organized for business and the contract was let for the erection of an apartment house according to plans attached, certain described real estate. It was agreed that said apartments were to cost approximately $120,000, that they were to be constructed according to plans and specifications attached, and that the work on the erection of said apartments was to begin within four months from the date of the granting of the charter of said Athens Apartment Corporation; otherwise said corporation was to forfeit all its rights under said

contract. It was further agreed that, after this contract was transferred by said McKenzie to said corporation, said Georgia Development Co. would look only to said corporation for fulfillment of its terms.

On May 3, 1920, said McKenzie and Scott subscribed for 125 shares of the common stock of said Athens Apartment Corporation, and agreed to pay for the same by selling $100,000 of its preferred stock at par, bearing all the expenses of selling the same. The proceeds of the sale of said preferred stock and all contracts for the purchase of the same were to be turned over to the treasurer of said corporation as received, said $12,500 of common stock to be issued and delivered to said subscribers when they had sold $100,000 of the preferred stock. They agreed to pay for said preferred stock as rapidly as they sold it. A formal resolution was adopted, accepting said subscriptions and authorizing the issue and offer for sale at par of said $100,000 of preferred stock. This resolution was introduced by Eugene Anderson, and was passed on May 3, 1920. On the same date there was a meeting of the stockholders of the company, and Harold C. McKenzie and Thomas H. Scott were elected directors. On the same date the directors elected McKenzie president, Scott vice-president, and Anderson secretary and treasurer. On May 20, 1920, the Georgia Development Co. by its deed conveyed to the Athens Apartment Corporation the tract of land described in the above agreement between it and said McKenzie. In this deed there was this provision: "This deed is made distinctly on the following conditions: First: That the building which is to be erected on this lot is to conform to the building lines as shown on said plat. Second: That this property is never to be given or sold to any one of negro blood. Third: That not later than June 21st, 1920, the erection of a certain apartment house, according to the plans and specifications which have this day been submitted, is to begin and to be completed according to said plans and specifications, with reasonable dispatch. It is further provided that in case any one of these conditions is violated or not complied with, then the estate granted in the above described lot to the party of the second part shall terminate and revest in the Georgia Development Company." On May 17, 1920, the Athens Apartment Corporation executed and delivered to L. J. Hill Jr. its note for $750, payable

thirty days after date. On June 16, 1920, this note was renewed for a period of 45 days. Hill instituted suit against McKenzie, Scott, Anderson, and the Athens Apartment Corporation, in which he undertook to hold them liable for said debt of the corporation, on the ground they had organized it and contracted business in its name before the minimum capital stock had been subscribed. On the trial of the case the facts hereinbefore stated were shown. Plaintiff further introduced evidence tending to show that the property embraced in the contract between the Georgia Development Co. and H. C. McKenzie was worth, on May 3, 1920, $7750. It was further shown that about June 26, 1920, the Athens Apartment Corporation and the proposed erection of the apartment house had completely failed, and that none of the preferred stock had been sold.

The plaintiff testified substantially as follows: He first knew about the Athens Apartment Corporation when employed by McKenzie the latter part of April, 1920. The work proceeded through April and May. After he started the drawing McKenzie told him the corporation was to be organized and as soon as things got into effect his note would be paid. McKenzie did not tell him he would be personally responsible for the note; he did not ask McKenzie to indorse the first note. The present note was given in renewal of the other one. When the first note was made McKenzie told him he was merely financing the erection of the building, that it was to be for the Athens Apartment Corporation, of which he was president. Witness said he would just as soon deal with the corporation as with McKenzie. McKenzie wanted an extension of the note for thirty days, and the witness wanted it for fifteen days. He asked McKenzie to indorse it, and he declined. The note sued on was a renewal of the other note, dated May 17, 1920. He knew they were to sell the stock. McKenzie said he had some stock subscribed and was going to sell some more. That was the year after his trade with McKenzie. McKenzie told him he was not acting for himself, but for the corporation, when he signed the note as the corporation by him as president, and told him it would be paid by the corporation. The plaintiff introduced the note of May 17, 1920, and the renewal note of June 16, 1920.

Harold McKenzie testified for plaintiff substantially as follows: The first time he talked to Hill about the plans for this building

he called him up and he came to office of witness in the Healey building. They discussed the drawings and plans; he had a plat of the lot at the time. They discussed the fact that the corporation had to be organized and that stock was to be sold in Athens. He was taking an active part in it; and Hill did not want to draw plans for the corporation, but for the witness, but he would not be responsible. Hill knew the company was not organized, and after the plans and specifications had been completed Hill asked him how Anderson was getting along selling stock in Athens. He knew it was dependent on Anderson selling stock in Athens. About the time this building was started the slump came. There is no question that Hill knew the financial condition of the corporation. Witness thinks they discussed everything. Hill knew from the first the company did not have the money to pay him; and Hill wanted him to indorse the note, and he refused to do so. When Hill perfectly understood it, he drew the plans. Doesn't know whether Hill knew conditions upon which stock was subscribed for. Thinks the lot is worth $12,500. They did not erect the apartment house and did not use the plans at all. They built ten garages.

The plaintiff, recalled, testified: He did not have any knowledge regarding financial plans of the Athens Apartment Corporation, and was not taken into their confidence or that of McKenzie. Was merely told they were organizing the corporation, and knew they were going to sell stock in Athens, but knew nothing about individual subscriptions. First learned of this since his suit was filed. Does not know whether McKenzie told him about selling of $100,000 preferred stock. He told witness Anderson went to Athens to sell stock.

McKenzie, recalled, testified: He put up $3500 in actual cash in the corporation, and did not get anything out of it. He advanced this amount so the corporation could meet its pay-roll and buy cement for the garages. Expected to subscribe for whatever amount of stock was necessary, and apply it on additional capitalization. Had $12,500 worth issued.

The jury returned a verdict for the plaintiff. The defendants moved for a new trial on the general grounds, which motion the court overruled; and error is assigned in this court upon that judgment.

*McElreath & Scott,* for plaintiffs in error.

*Henry A. Alexander,* contra.

HINES, J. (After stating the foregoing facts.)

1. Did the court err in refusing to vacate its order reinstating this case? When upon the call of this case, the plaintiff not appearing, counsel for the defendant moving to dismiss the same for want of prosecution, the trial judge announced orally that the case was dismissed for want of prosecution, and struck the case from the trial calendar, and made the following entry in pencil on such calendar on Nov. 4, 1921, opposite the case: "Dismissed for want of prosecution," but no order was taken at the September term, 1921, of said court, and said entry was not placed on the minutes thereof, these proceedings, without more, were insufficient to accomplish the dismissal of the suit. *Dixon* v. *Minnesota Lumber Co.,* 132 *Ga.* 347 (64 S. E. 71). During the term of court at which a judgment is rendered the court has power, on its own motion, to vacate the same for irregularity, or because it was improvidently or inadvertently entered. The court has plenary control of its judgments, orders, and decrees during the term at which they are rendered, and may amend, correct, modify, or supplement them for cause appearing, or may, to promote justice, vacate them as may in its discretion seem necessary; and the exercise of his discretion by the trial judge in reinstating a case dismissed for want of prosecution will not, unless flagrantly abused, be disturbed. The order of reinstatement is evidence of the improper dismissal of the case and of the propriety of its reinstatement. *Davis* v. *Alexander,* 27 *Ga.* 479; *Wallace* v. *Cason,* 42 *Ga.* 435; *Strachan* v. *Wolfe,* 2 *Ga. App.* 254 (58 S. E. 492); *Jones* v. *Garage Equipment Co.,* 16 *Ga. App.* 596 (85 S. E. 940). Under the facts, the court did not abuse its discretion in reinstating this case.

2. Persons who organize a company and transact business in its name before the minimum capital stock has been subscribed for are liable to creditors to make good the minimum capital stock with interest. Civil Code (1910), § 2220; *Burns* v. *Beck & Gregg Hardware Co.,* 83 *Ga.* 471 (10 S. E. 121); *John V. Farwell Co.* v. *Jackson Stores,* 137 *Ga.* 174 (73 S. E. 13); *Smith* v. *Citizens &c. Bank,* 148 *Ga.* 764 (98 S. E. 466). What kind of subscriptions will comply with the requirements of this section of the Code, and

free persons, who organize and transact business in the name of a corporation, from liability to its creditors? In the absence of waiver or estoppel, is it proper to include subscriptions which are for any reason invalid and unenforceable, subscriptions by fictitious persons, idiots, lunatics, persons non compos mentis, paupers, or persons known to be insolvent and not answerable for their engagements, conditional subscriptions where the conditions have not been performed so as to make them absolute, subscriptions on special terms which reduce the amount to be paid upon them below par, or for any other reason render the subscriptions invalid, and such like subscriptions? The exact question involved in this case has not been decided by this court. While we do not find among our decisions one on all-fours with the one we make in this case, the governing and controlling principle has been ruled and settled. This court has held that, in determining whether the capital stock of a corporation has been subscribed, in a case where the whole capital stock must be subscribed in order to bind a subscriber, conditional subscriptions can not be counted unless it is shown that the conditions have been complied with so as to make them absolute. *Brand* v. *Lawrenceville Branch R.,* 77 *Ga.* 506 (1 S. E. 255). In *Memphis Branch R. Co.* v. *Sullivan,* 57 *Ga.* 240, this court said: " If the sum fixed by the charter had been subscribed, and yet subscriptions had been released so as to reduce the capital largely and materially, without the consent of the subscriber, the effect would be the same as if the stock released had never been subscribed. A mere nominal subscription, to fulfill the letter and break the spirit of the contract, is no substantial compliance with the charter, and when released because it was nominal, it becomes equivalent to no subscription *ab initio.*" On the effect of an invalid guarantee of a sufficient amount of stock to make up the amount which would bind subscribers, see *Branch* v. *Augusta Glass Works,* 95 *Ga.* 573 (6) (23 S. E. 128).

These decisions of this court are in line with the authorities in other jurisdictions. Stone *v.* Monticello Construction Co., 135 Ky. 659 (117 S. W. 369, 40 L. R. A. (N. S.) 978); Penobscot R. Co. *v.* White, 41 Me. 512 (66 Am. D. 257); Lewey's Island R. Co. *v.* Bolton, 48 Me. 451 (77 Am. D. 236); Morgan *v.* Landstreet, 109 Md. 558 (72 Atl. 399, 130 Am. St. R. 531); Troy &c. R. Co. *v.* Newton, 8 Gray, 596; Oskaloosa Ag. Works *v.* Parkhurst,

54 Ia. 357 (6 N. W. 547) ; California So. Hotel Co. *v.* Russell, 88 Cal. 277 (26 Pac. 105) ; 1 Morawetz on Priv. Corp. § 141; 14 C. J. § 811. So we are of the opinion that subscriptions must be bona fide, unconditional, and not colorable and illusory; and unless such subscriptions are obtained, persons who organize a corporation and do business in its name will be liable to creditors of the corporation. Subscriptions to meet the letter but break the spirit of the statute are in effect no subscriptions. Under the facts of this case, the jury were authorized to find that the subscriptions to the capital stock of this company did not measure up to this standard.

3. But if, at the time credit was extended, the creditor knew that the requisite amount of capital stock had not been subscribed, he would not have been misled, and as to him the subscribers to the stock would not be estopped from pleading such knowledge as a defense to a suit brought under this section of the Code. *Lowe* v. *Byrd,* 148 *Ga.* 388 (96 S. E. 1001) ; *Farmers Warehouse Co.* v. *Macon F. Works,* 150 *Ga.* 429 (104 S. E. 207). It is insisted that under the application of this principle the verdict is contrary to law and the evidence. We can not, as a matter of law, hold that the evidence demanded a finding that the plaintiff knew that the requisite amount of capital stock had not been subscribed. There is some evidence to sustain the finding of the jury on this point.

*Judgment affirmed. All the Justices concur, except Atkinson and Hill, JJ., disqualified.*

GILBERT, J., concurs specially.