## 22761. WILLSON v. APPALACHIAN OAK FLOORING & HARDWARE COMPANY et al.

ARGUED JANUARY 11, 1965—DECIDED FEBRUARY 4, 1965.

*Congdon & Holley, W. Barry Williams,* for plaintiff in error.
*Fulcher, Fulcher, Hagler & Harper, Bohler & Yow, Hull, Willingham, Towill & Norman, Harris, Chance, McCracken & Harrison, Charles G. Houston, Jr., Thurmond, Hester, Jolles & McElmurray, William C. Calhoun, Nicholson & Fleming,* contra.

ALMAND, Justice. To a petition seeking legal and equitable relief by several creditors of Old South Manufacturing Co., Inc. against seven individuals and one corporation, the overruling of the general and special demurrers of one defendant, Woodrow Willson, is the subject matter of review in the bill of exceptions of Willson.

The sole question is: was the petition as amended subject to the demurrers of the defendant Willson?

Appalachian Oak Flooring & Hardware Co. and six other corporations and A. W. Cordes, trading as Georgia-Carolina Manufacturing Co., and William T. Lamb et al., trading as Lamb Brothers Lumber Co., in behalf of themselves and all creditors of Old South Manufacturing Co., Inc., who might intervene, brought this action and named as defendants Woodrow Willson, six other individuals, and the American Shell Homes, Inc. It was alleged that: "Old South Manufacturing Company, Inc. was organized and operated for the purpose of permitting American Shell Homes, Inc. to acquire a manufacturing plant and inventory to construct shell homes, and so as to merge it with American Shell Homes, Inc. in order to form a series of interlocking companies to manufacture, sell, and finance shell homes; that all the acts and omissions herein described were in furtherance of this plan and were done to accomplish this result without any risk or liability upon the individuals or American Shell Homes, Inc. in the event of adverse financial developments. That each of the defendants conspired with the others or acted upon orders of their superiors who conspired with the others to accomplish the result described above; there was general concert of action among the defendants to deceive the plaintiffs and obtain credit from them, and each and every act herein alleged of each and every defendant was performed and committed in pursuance of said conspiracy to deceive and defraud the petitioners and the other creditors for whose benefit this action is instituted. That all of the defendants are jointly and severally liable to each of the plaintiffs for fraud and deceit practiced upon the plaintiffs for the deliberate purpose of inducing each of the plaintiffs and all others similarly situated to extend credit to Old South Manufacturing Company, Inc. to the injury, damage and loss as hereinafter set forth."

The enumerated acts of the defendants were: (a) defendant Thomas and others applied to the Superior Court of Columbia County, Ga., to be incorporated under the name of "Old South Manufacturing Co." and the amount of the capital stock was shown to be not less than $100,000; that at the time the petition for a charter was presented neither Thomas nor the other parties had obligated themselves by stock subscription to pay any part

of said minimum capital stock; that on·February 8, 1961, the incorporators of Old South assigned their rights to the issuance of stock to the defendants, Thomas, James D. Pratt, P. W. Pratt, Jr., and Charles H. Douglas, but these shares were never paid for and they "began doing business under that name and style, all of them having full knowledge that no capital had been subscribed for by a valid subscription agreement under which any person was obligated to pay for stock in Old South Manufacturing Company, Inc.; and with full knowledge that the minimum capital of $100,000 had not been paid to the corporation" and "That on February 8, 1961, the purported holders of the right to own stock, Charles H. Douglas, P. E. Thomas, James D. Pratt, and P. W. Pratt, Jr., elected themselves as Directors of Old South Manufacturing Company, Inc., and in their representative capacities as members of the Board of Directors of Old South Manufacturing Company, Inc., these defendants elected P. E. Thomas as President, Charles H. Douglas as Executive Vice-President, James D. Pratt as Vice-President, and P. W. Pratt, Jr. as Secretary-Treasurer; and shortly thereafter, Robert R. Warr and Woodrow Willson were also elected directors; and all of said directors accepted their positions and undertook to handle the business of Old South Manufacturing Company, Inc. and continued to act as directors until August 15, 1961. That said board of directors did business under the name and style of Old South Manufacturing Company, Inc. with the full knowledge that the minimum capital required by the charter had not been paid and that there was no valid stock subscription agreement in existence"; that after February 8, 1961, but prior to June 14, 1961 "Robert R. Warr and Woodrow Willson acquired the purported right to own capital stock in Old South Manufacturing Company, Inc. and had themselves elected directors of said company, and as such directors, they undertook with the other directors to do business under the name and style of Old South Manufacturing Company, Inc.; and that as a director of Old South Manufacturing Company, Inc., they knew there was no valid stock subscription agreement in existence under the terms of which anyone was obligated to pay for any particular number of shares of stock of Old South Manufacturing Company, Inc.;

and they knew the minimum capital had not been paid in"; that on "March 9, 1961, American Shell Homes, Inc., by and through its officer, Charles H. Douglas, who was acting within the scope of his employment by American Shell Homes, Inc. and as agent for such corporation, in order to benefit it and all the other defendants, released to Dunn and Bradstreet a financial statement and report, representing that Old South Manufacturing Company, Inc. was legally organized; that the capital stock of Old South Manufacturing Company, Inc. had been paid in to the extent of $99,730 and further representing that since the financial statement had been prepared, an additional 90,000 shares had been subscribed for and were expected to be issued. That said financial statement released to Dunn and Bradstreet also showed that Old South Manufacturing Company, Inc. owned fixtures and equipment having the value of $40,325 and that it had notes receivable in the amount of $71,900. That on March 9, 1961, the corporation did not own any fixtures or equipment and did not hold any valid notes totaling $71,900, nor has the corporation since said date acquired any fixtures and equipment or any notes receivable in said sum; the capital stock of the corporation had not been paid in to the extent of $99,730 and the additional 90,000 shares had not been subscribed for; the financial statement was false when it was issued, which falsity was known to Charles H. Douglas and through him was known to American Shell Homes, Inc. and was known by each of the other defendants herein named. That the release of information by Charles H. Douglas to a representative of Dunn and Bradstreet was with the full knowledge and expectation that the information would be transmitted and circulated in the financial world; that suppliers who were expected to sell materials to Old South Manufacturing Company, Inc. would receive the information released to Dunn and Bradstreet; and that because of the favorable information contained in the release, such suppliers would sell to Old South Manufacturing Company, Inc. on credit; that the plaintiffs acted upon this information; they sold merchandise to Old South Manufacturing Company, Inc. on credit in reliance upon said information so furnished, without knowledge of the falsity of this information and they suffered loss as a

result thereof; and except for which false and fraudulent misrepresentations, these plaintiffs would not have extended credit; and they would not have suffered the loss herein described." The specific acts as to the defendants Johnson and American Shell Homes, Inc. were: "That during the months of March, April and May, 1961, the Directors of Old South Manufacturing Company, Inc. negotiated with the directors of American Shell Homes, Inc. to effect a merger of the two corporations, as a result of which the stockholders of Old South Manufacturing Company, Inc. would convey their stock to American Shell Homes, Inc., the details of which negotiations and agreements are well known to the defendants, but are unknown to the plaintiffs, who did not participate in, nor were they kept informed of said negotiations. On June 21, 1961, American Shell Homes, Inc., by and through its Secretary-Treasurer, Harold L. Johnson, who was acting within the scope of his employment as Secretary-Treasurer of American Shell Homes, Inc., mailed a written communication to all suppliers of Old South Manufacturing Company, Inc., notifying all suppliers, which included the plaintiffs in this suit, that Old South Manufacturing Company, Inc. had been acquired by American Shell Homes, Inc. as a wholly-owned subsidiary; and plaintiffs herein and other suppliers were informed by this communication that James D. Pratt, O. E. Wilson, Jr., or Harold L. Johnson were the only persons authorized to sign purchase orders in behalf of Old South Manufacturing Company; and plaintiffs herein and other suppliers were informed and advised that James D. Pratt would be in complete charge of operating the manufacturing plant of Old South Manufacturing Company, Inc. for American Shell Homes, Inc. That the statement that Old South Manufacturing Company, Inc. had been acquired by American Shell Homes, Inc., as a wholly-owned subsidiary was false; and Harold L. Johnson and American Shell Homes, Inc. knew it was false when it was mailed, but the falsity was not known to the plaintiffs until after they had extended credit and after Old South Manufacturing Company, Inc. was declared a bankrupt. That none of the plaintiffs knew that the minimum capital of Old South Manufacturing Company, Inc. had not been subscribed for or paid in during the period when they ex-

tended credit to it, or that the information released to Dunn & Bradstreet as described in paragraph 10 of this petition was false, or that Old South Manufacturing Company had never been merged with American Shell Homes, Inc.; that the representations induced and encouraged the plaintiffs to sell materials and supplies to Old South Manufacturing Company, Inc. on credit, which they would not have done had they been fully and truthfully informed of all the facts as they actually existed; that the plaintiffs acted upon these representations to their loss and damage as hereafter set forth." The specific acts as to American Shell Homes, Inc. and defendant Woodrow Willson were: "That on or about June 1, 1961, American Shell Homes, Inc., by and through its President, Woodrow Willson, who was acting within the scope of his employment, placed James D. Pratt in charge of the manufacturing operations of Old South Manufacturing Company, Inc. at Martinez, Georgia, and James D. Pratt operated the business of Old South Manufacturing Company, Inc. for the benefit, and to earn a profit for, American Shell Homes, Inc. until August 15, 1961; and American Shell Homes, Inc. charged Old South Manufacturing Company, Inc. for management services during said period of time; and $4,435.00 was paid by Old South Manufacturing Company, Inc. to American Shell Homes, Inc. for such management service." It was further alleged: "P. E. Thomas, J. D. Pratt, P. W. Pratt, Jr., Robert R. Warr and Woodrow Willson, as officers and members of the Board of Directors of Old South Manufacturing Company, Inc., and Woodrow Willson, as President, and Harold L. Johnson, as Secretary-Treasurer of American Shell Homes, Inc., and American Shell Homes, Inc. itself, between June 21, 1961, and August 14, 1961, each had actual and personal knowledge that the minimum capital stock of Old South Manufacturing Company, Inc. had not been subscribed for and had not been paid in; and each of them knew that the Old South Manufacturing Company, Inc. was insolvent during this period of time; but nevertheless, they continued to operate and transact business in the name of Old South Manufacturing Company, Inc. for the purpose of obtaining an adventage to themselves and to profit American Shell Homes, Inc.; they continued to purchase mer-

chandise on credit for Old South Manufacturing Company, Inc., which was used for the benefit of the defendants; they failed and refused to inform the plaintiffs of the precarious financial condition of Old South Manufacturing Company, Inc.; and they wilfully and wantonly induced the plaintiffs to continually increase the amount of their losses by further extension of credit; all in violation of Section 34 of the Corporation Act of 1938 (Code Section 22-1872)"; that after August 17, 1961 there remained in the capital account of Old South Manufacturing Company only the sum of $1,600; that on October 9, 1961, Old South was declared a bankrupt in the United States District Court and only about 50% of plaintiffs' claims as creditors are available to them as dividends in the bankruptcy proceedings and the total loss of the plaintiffs for merchandise and goods sold to Old South on its credit is $65,839.50. It was further alleged: "That the amount of the creditors' loss does not exceed the minimum with which the corporation was to have paid in as capital; and if the minimum capital had been paid in, the company would have been able to pay all its debts. That all of the representations made by the defendants were done wilfully and maliciously for the purpose of hiding the true financial condition of Old South Manufacturing Company, Inc. and for the purpose of building up its reputation with respect to its ability to pay its debts and to deceive and defraud all suppliers so that they will extend credit to Old South Manufacturing Company, Inc. and permit it to do business with the plaintiffs without the necessity of putting up any funds; and because of this conduct, each of the defendants is subject to the payment of punitive damages and attorney's fees to deter them and each of them from repeating this reprehensible conduct and from damaging and injuring other legitimate businessmen under similar circumstances. That this court should exercise its equitable jurisdiction to prevent a multiplicity of suits because each party has an interest in the amount of capital, paid or subscribed for, with which Old South Manufacturing Company, Inc. should have had before transacting business; and each party has an interest in the impairment of the capital account of Old South Manufacturing Company, Inc. causing loss and damage to all the creditors." The prayers

were that the plaintiffs have judgment against each of the defendants, jointly and severally, for $65,839.50. (The prayers for punitive damages and attorney's fees were stricken on the demurrer of the defendant Willson.)

The defendant Willson demurred generally on the grounds that (a) no cause of action was alleged against him; (b) the petition was without equity and (c) the plaintiffs, and each of them, have a full and complete remedy at law. The special demurrers were on the grounds of: (a) misjoinder of parties plaintiff; (b) misjoinder of parties defendant; (c) misjoinder of causes of action and (d) a multifarious petition.. Other special demurrers related to specific paragraphs.

■ The General Demurrers of the Defendant Willson.

We have set out above a full statement of fact. The question raised by the general demurrer is whether or not the petition sets forth a cause of action against the defendant as a member of a conspiracy to defraud the plaintiffs as creditors of Old South Manufacturing Company. The petition charges that defendant Willson and other named defendants conspired and acted together in organizing and incorporating Old South Manufacturing Company so that plaintiffs and others would extend credit to it and permit the defendant American Shell Homes, Inc. to construct shell homes without any risk or liability upon the individual defendants or American Shell Homes, Inc. The dedefendants, jointly and severally, were charged with fraud and deceit in that Old South Manufacturing Company was chartered and operated for the purpose of inducing the plaintiffs to extend credit to it, to their loss and injury. The petition then enumerated the joint and several acts of the defendants: (a) the organization and transaction of business by the Old South Manufacturing Company, Inc. when the minimum capital stock ($100,000) had not been subscribed or paid for; (b) that the plaintiffs had extended credit to Old South upon a financial statement issued by one defendant which stated: that the capital stock of Old South had been paid in to the extent of $99,730; that it owned fixtures and equipment exceeding the value of $40,000 and had notes receivable in an amount exceeding $71,000; that the statements in the financial statement were all false and

were known by the defendant Willson to be false; (c) that the notice sent to plaintiffs that Old South had been acquired by the defendant American Shell Homes, Inc. was false and not known to the plaintiffs until after the bankruptcy of Old South, and (d) the acts of the directors of Old South, including the defendant Willson, permitting two other stockholders who were defendants to cancel out their indebtedness of $15,000 by the purchase of the stockholders' capital stock by the corporation was in fraud of the creditors of the corporation.

In effect, the petition charges that the defendants in their acts of creating a corporation known as Old South Manufacturing Company, its organization and the transaction of its business, created a corporate entity in which it was represented that its minimum capital stock had been subscribed for as required by *Code Ann.* § 22-1872 and subsequently issued false financial statements as to its assets, all of which induced the plaintiffs to sell their goods to Old South to their loss and injury.

An equitable petition brought by creditors of an insolvent corporation against the corporation and several individuals who, as alleged, organized the corporation and transacted business before the minimum capital stock had been subscribed as required by Sec. 34 of the Corporation Act of 1938 (*Code Ann.* § 22-1872) and praying judgment against all of the defendants, it appearing that the total of indebtedness to such creditors was less than the difference between the amount of stock actually subscribed for and the minimum capital stock of the company was held in *John V. Farwell Co. v. Jackson Stores*, 137 Ga. 174 (1) (73 SE 13) not to be subject to general demurrer or the special demurrers on the ground of misjoinder of parties plaintiff and defendant and it was held that the petition was not a joinder of separate and distinct causes of action. In its opinion (headnote 3) the court said: "Organizers of a company who transact business in its name before the minimum capital stock has been subscribed for are considered as committing a fraud upon those who may extend credit to the company, and the statute imposes a liability upon them for engaging in such fraudulent transaction, and they should not be allowed to escape the statutory penalty for such fraud by disposing of their stock."

See also *Bacon v. Michelin Tire Co.,* 160 Ga. 591 (128 SE 906), *Smith v. C. & S. Bank,* 148 Ga. 764 (98 SE 466), *Athens Apartment Corp. v. Hill,* 156 Ga. 437 (119 SE 631), *Crandall v. Shepard,* 166 Ga. 396 (143 SE 587), and *Williams v. Clemons,* 178 Ga. 619 (173 SE 718).

It is contended by the defendant that since the petition does not allege that he was one of the persons who organized the corporation and transacted business before the minimum capital stock had been subscribed, under the ruling in *John V. Farwell Co. v. Jackson Stores,* 137 Ga. 174, supra, and *Carter v. Parrish,* 154 Ga. 531 (114 SE 709), he cannot be held for the debts of the corporation. Those two cases were brought on the sole basis of enforcing liability under the provisions of *Code Ann.* § 22-1872 and did not involve any charge of a conspiracy to defraud or charge other alleged acts of fraud and deceit and are therefore distinguishable from the instant case. See also *Crandall v. Shepard,* 166 Ga. 396, supra.

The directors of a corporation may be liable for false statements in regard to the affairs of a corporation as for fraud and deceit, and where parties conspire to defraud the plaintiff or make a wilful misrepresentation of a material fact to induce the plaintiff to act to his injury, an action for deceit will lie. "Where parties conspire to defraud the plaintiff or make a wilful misrepresentation of material fact to induce the plaintiff to act to his injury, an action for deceit will lie. *Cheney v. Powell,* 88 Ga. 629 (15 SE 750). The directors of a corporation may be liable for false statements in regard to the affairs of the corporation, as for fraud and deceit. . . The directors or officers of a corporation are liable for their fraudulent acts and representations to persons who are injured thereby. They are no more immune from false representations with intent to deceive, which result in a loss to one who relied thereon, than any other individual. The fact that they are acting for the benefit of the corporation and that they did not personally receive the fruits of the transaction, or that the company is nominally the contracting party, does not relieve them from liability." *Hines v. Wilson,* 164 Ga. 888 (2a, c) (139 SE 802). A stockholder cannot sell his stock to the corporation and take therefrom his portion of the capital

stock to the prejudice of the corporation's creditors. *Fitzpatrick v. McGregor,* 133 Ga. 332 (65 SE 859, 25 LRA (NS) 50). Where several persons conspire to defraud another, one or all of the wrongdoers may be sued, and proof of the conspiracy renders the act of one in deceiving and defrauding the injured party the act of all. *Wall v. Wall,* 176 Ga. 757 (1, 4, 5) (168 SE 893); *Grant v. Hart,* 192 Ga. 153 (14 SE2d 860).

Allegations with reference to a conspiracy are treated as matters of inducement followed by a more particular description of specific acts from which a conspiracy may be inferred. The essential element is the charge of a common design. It is sufficient to charge that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design. After the conspiracy is formed, if a party joins therein, knowing of its existence and purpose, he becomes as much a party thereto as if he had been an original member. *Cook v. Robinson,* 216 Ga. 328 (5) (116 SE2d 742).

Applying the foregoing authorities to the facts in this case, the amended petition was not subject to the general demurrers of the defendant Willson.

■ Nor was the petition subject to the special demurrers on the grounds of misjoinder of parties plaintiff or defendant; nor on the ground that the petition stated separate and distinct causes of action. *John V. Farwell Co. v. Jackson Stores,* 137 Ga. 174, supra. "Where several matters are stated in a petition, not as distinct and unconnected, but as arising 'out of the same transaction or series of transactions, forming one course of dealing, all tending to a single end,' a demurrer for misjoinder of causes of action will not lie." *Grant v. Hart,* 192 Ga. 153 (4), supra. The court did not err in overruling special grounds 10, 11, and 12 to paragraph 10 (b) of the petition on the grounds that the allegations in this paragraph were too vague, evasive or equivocal to charge the defendant Willson with knowledge, actual or constructive, of the falsity of the statement issued by American Shell Homes as to the financial condition of Old South Manufacturing Company on March 9, 1961.

■

The orders of the trial court overruling the general and special demurrers of the defendant Willson are

*Affirmed. All the Justices concur.*