**In the Matter of Milward EUBANKS, Bankrupt, Appellant,**

**v.**

**ALLSTATE INSURANCE CO. et al., Appellees.**

**No. 29842.**

United States Court of Appeals, Fifth Circuit.

April 8, 1971.

Frank S. Twitty, Camilla, for appellant.

Frank S. Twitty, Camilla, Ga., for appellant.

Before GEWIN, BELL and ALDISERT *, Circuit Judges.

* Of the Third Circuit, sitting by designation.

BELL, Circuit Judge:

This appeal is from an order of the district court affirming the decision of a referee in bankruptcy, in which the bankrupt was adjudicated liable for claims of creditors totalling $14,366.68. About half of these claims arose from the debts of Milward Eubanks Trucking, Inc., a corporation of which the bankrupt was president and the principal shareholder. The referee held the bankrupt personally liable for the corporate debts on two theories. First he determined that the facts were such as to warrant the piercing of the corporate veil. Second, he determined that the bankrupt had failed to pay into the corporation the capital specified in the corporate charter and thus was liable under the Georgia statute, Ga.Code Annot., § 22–1872, to the creditors in question. The district court decision was premised on the first theory. We, however, pretermit decision on that theory and affirm the personal liability of the bankrupt for the debts of the corporation on the statutory ground.[1] An additional question is presented as to sufficiency of the proof as to one of the claims and we also affirm on that question.

Milward Eubanks Trucking, Inc., was incorporated on October 15, 1959. Prior to that time, bankrupt was individually engaged in the trucking business. The corporation was organized with a stated capital of $75,000. The capital stock consisted of 100 shares with a par value of $750 each. The bankrupt received 98 shares, and his brother and father received one share each.

What the corporation received as consideration for the shares is the subject of considerable doubt. It appears that trucks and trailers, formerly owned by the bankrupt, were transferred to the corporation as part payment for the capital stock. Operating rights from the Georgia Public Service Commission and the Interstate Commerce Commission were also transferred to the corporation. The amount of cash put in by the bankrupt (apparently, the other two shareholders put in no cash), is also in doubt. At different times, bankrupt testified that he put in $1,000 and $5,000 or $6,000. At any rate, there is no claim that the capital of the corporation ever exceeded $50,000 and there are no records to show payment to the corporation even of this amount, through cash payments the transfer of property, or otherwise. The bankrupt was involved in a serious automobile accident in 1961, and in early 1962 the corporation ceased to operate, being virtually without assets. See footnote (1), supra.

The debts in issue are those of nine unsecured creditors. Eight of these were allowed in full while one was partially allowed. There is no appeal to this court from the affirmance by the district court of the partial disallowance in the amount of $3,100.

Bankrupt concedes claims against the corporation totalling $6,643.51, but argues that he should not have been held personally liable for them. Also, bankrupt concedes most of the individual claims, with the rather significant exception of $2,964.82 claimed as due by him individually to Powell. As to this amount and the sum of $456 claimed by Powell against the corporation, bankrupt urges that the proof was insufficient.

With respect to the personal liability of the bankrupt for the amounts owed by the corporation, the referee first held that the corporate veil was due to be pierced. As an alternative theory, he held the bankrupt was liable under Ga. Code Ann. § 22–1872 to the extent that bankrupt had failed to pay in the stated capital.

As has been noted, the capital of the corporation was represented as $75,000. Bankrupt obligated himself to pay $73,500 of this amount. At the outside, no more than $50,000 is claimed to

---

1. Milward Eubanks was adjudicated bankrupt on June 3, 1963, on an involuntary petition filed by a number of creditors. The corporation was also named in the petition, but was later dismissed as a party since at that time it was apparently without assets.

have been paid. The debts of the corporation here involved total $7,099.51, much less than the difference between what bankrupt paid in as capital and what he was obligated to pay in. In these circumstances his liability under the Georgia law to the creditors of the corporation is clear.

■ Section 22–1872 [2] has been construed as constituting the capital stock of a corporation as a trust fund for the payment of the debts of the corporation. To the extent that the minimum capital has not been paid in, the organizers of the corporation or the subscribers to the stock, as the case may be, are liable to the creditors. Willson v. Appalachian Oak Flooring & Hdwe. Co., 1965, 220 Ga. 599, 140 S.E.2d 830; Williams v. Clemons, 1934, 178 Ga. 619, 173 S.E. 718; Athens Apt. Co. v. Hill, 1923, 156 Ga. 437, 119 S.E. 631; Hill v. Silvey, 1888, 81 Ga. 500, 8 S.E. 808. The proscription of this statute applies directly to the bankrupt here and there was no error under the appertaining facts in holding him personally liable for the corporate debts.

■ We turn now to the question whether the referee erred in sustaining the Powell claim from the standpoint of proof. The proof of claim, as filed, consisted of a statement of account by monthly totals as to charges and credits. The account began in April 1958 and was terminated in January 1960. The charges after the date the corporation was formed amount to only $456 out of the total of $3,420.82 claimed.

The record discloses that neither Powell nor the bankrupt had records at the time of the hearing in 1968 to substantiate the underlying charges and credits. There was, however, evidence that in the spring of 1961, bankrupt, his bookkeeper and Powell examined the underlying charge tickets and the statement of account in the office of counsel for Powell. (The records were lost by counsel or the state court at sometime during the seven year interval between the conference and the hearing of this matter in the bankruptcy court). One charge for tires was questioned at the time. The bankrupt also doubted that he had been given credit for all payments. Nothing further was heard from the bankrupt as to his contentions. On the hearing of this matter, he simply denied owing anything at all.

We find ample basis to support the finding of the referee that the sums in question were due Powell. That is the end of the matter under the clearly erroneous rule.[3] DeMet v. Harralson, 5 Cir., 1968, 399 F.2d 35, 38; Larkins v. Sills, 5 Cir., 1967, 377 F.2d 1, 3.

Affirmed.

2. *"Organization before capital subscribed; liability.*—

"Persons who organize a corporation and transact business in its name before the amount of capital, with which the petition or declaration for its charter states that it will begin business, has been bona fide subscribed for are liable to creditors to make good the amount of capital so stated."

This statute was superseded on April 1, 1969 by an almost identical statute. See § 22–4104, a part of the Georgia Business Corporation Code, Ga.Laws 1968, pp. 565, 799.

3. It goes without saying that the proof might have been facilitated absent the inordinate delay in disposing of this bankruptcy matter which commenced December 26, 1962. The proof of claim was filed July 1, 1963 and the hearing involving the sufficiency of the claim was on September 16, 1968. See In re Eubanks (Bainbridge Truck & Tractor Co. v. Eubanks), 5 Cir., 1970, 418 F.2d 1250, on another matter arising out of this same bankruptcy.