A95A1105. SAVANNAH COLLEGE OF ART & DESIGN, INC. ·
v. SCHOOL OF VISUAL ARTS OF SAVANNAH, INC. et al.
(464 SE2d 895)

BEASLEY, Chief Judge.

Savannah College of Art & Design ("SCAD") alleged that 11 defendants, together with 26 persons not named as defendants, entered a conspiracy to take over or destroy SCAD by illegal, wrongful, and tortious means. It seeks to hold defendants jointly and severally liable. See *Cook v. Robinson*, 216 Ga. 328, 329 (2), (4) (116 SE2d 742) (1960). See also OCGA § 51-12-30. Specific torts were alleged against various defendants. Among the defendants were the three involved in this appeal; School of Visual Arts, Inc. ("SVA"); Rhodes, SVA's President; and School of Visual Arts of Savannah, Inc., SVA's Georgia affiliate. They were alleged to have tortiously interfered with SCAD's existing and potential business relationships with students, faculty, staff, accrediting organizations, and banks. Georgia allows such a cause of action. See, e.g., *St. Mary's Hosp. &c. v. Radiology Professional Corp.*, 205 Ga. App. 121, 124 (2) (421 SE2d 731) (1992). SCAD appeals from the grant of partial summary judgment to these three defendants.

The court determined there was evidence from which it could be argued a conspiracy was formed, but no evidence these defendants were involved prior to July 29, 1992, when SVA made its first contacts in Savannah. The court concluded that they could not be held jointly and severally liable for any torts committed by others before that date. SCAD does not dispute the court's factual statement but contends it erred as a matter of law because they were co-conspirators.

SCAD recognizes it cannot recover separately for any tort of conspiracy and advances conspiracy as a means to impute liability to all defendants for the acts performed by only one or some. See *Groover v. Brandon*, 200 Ga. 153, 164 (3) (36 SE2d 84) (1945). "The gravamen of any civil conspiracy claim is not the alleged collusion, but tortious conduct committed against the plaintiff which proximately causes an injury. [Cit.]" *Ray v. Atkins*, 205 Ga. App. 85, 90 (3) (421 SE2d 317) (1992). SCAD contends that under the conspiracy theory, any defendant who joins it is liable for all acts committed in furtherance of an ongoing conspiracy, even if committed before that defendant joined

it.

The defendants urge that the trial court was correct on this point.

The law is that " '[a] conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. [Cit.] . . . [W]here the act of conspiring is itself legal, the means or method of its accomplishment must be illegal.' [Cits.]" *Cook*, supra at 328-329 (1). As quoted recently by the Georgia Supreme Court from earlier cases: " 'A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means.' " *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 297 (1) (443 SE2d 833) (1994).

" ' "The essential element . . . is the common design. . . . And anyone, after a conspiracy is formed, who knows of its existence and purposes and joins therein, becomes as much a party thereto . . . as if he had been an original member." [Cit.]' [Cits.]" *Cook*, supra at 330 (5). It is this second statement from *Cook* that SCAD relies upon to impute liability for acts committed before July 29, 1992. The statement comports with the general theory of conspiracy law in the United States. See 15A CJS, § 19 and *Chemetron Corp. v. Business Funds*, 682 F2d 1149, 1180 (5th Cir. 1982), which refers to this as an "immemorial common-law principle" and cites several cases including *Blackstone Indus. v. Andre*, 232 Ga. 715 (208 SE2d 815) (1974).

The principle has been accepted in Georgia for some time. See *Woodruff v. Hughes*, 2 Ga. App. 361, 365 (58 SE 551) (1907). The defendants point out that SCAD cites no Georgia case in which the principle has been specifically applied, only cases in which it is recited, but the courts of this state have often repeated it as part of the law of civil conspiracy in Georgia. See *Blackstone Indus. v. Andre*, supra at 716; *Peoples Loan Co. v. Allen*, 199 Ga. 537, 558 (1) (34 SE2d 811) (1945); *Grainger v. Jackson*, 122 Ga. App. 123, 128 (2) (176 SE2d 279) (1970); *Archer v. Gwinnett County*, 110 Ga. App. 442, 447-448 (2) (138 SE2d 895) (1964); *American Thread Co. v. Rochester*, 82 Ga. App. 873, 884 (62 SE2d 602) (1950). Indeed, the Supreme Court stated in *Peoples Loan Co.*, supra at 558-559: "While it is alleged that the original conspiracy was formed in August, 1943, and Peoples Loan Company is not shown to have been incorporated until May 18, 1944, its entrance into the conspiracy after its inception would equally bind it as to any wrongful act done by any one of the conspirators in pursuance of the general design. . . ." This Court applied the principle

in *Archer*, supra. The rationale is that the latecomer shares in the intended fruit of the conspiracy, the purpose of it, which in this instance is allegedly the takeover of SCAD or its destruction and replacement by SVA. Defendants have not cited any Georgia case which has disapproved the principle or applied one that is contrary, nor have we found one.

*Willson v. Appalachian &c. Hardware Co.*, 220 Ga. 599 (1) (140 SE2d 830) (1965), also dealt with a defendant who had joined an ongoing conspiracy. A corporation was formed with the directors' full knowledge that the stated minimum capital of $100,000 had not been paid to the corporation. After incorporation, Willson became a director. Other misrepresentations were made, all of which induced plaintiff supplier to extend credit. Plaintiff sought to hold Willson liable for damages flowing from the act of incorporation in addition to various fraudulent acts later committed. Willson demurred generally to the supplier's suit, arguing on appeal that he could not be held liable for the corporation's debts because he was not one of the persons who organized it and transacted business before the minimum capital stock had been subscribed. Id. at 608 (1).

After detailing the facts and Willson's argument, the Supreme Court affirmed the demurrer's demise, reciting that one who joins an ongoing conspiracy "knowing of its existence and purpose, . . . becomes as much a party thereto as if he had been an original member. [Cit.]" *Willson*, supra at 609 (1). As this was the issue Willson presented on appeal, we take the opinion as an acceptance by the Supreme Court of the principle and apply it here as the rule, fortified by the other cases cited above.

If SCAD can show there was a conspiracy to destroy it by tortious means existing before July 29, 1992, and that these defendants joined the conspiracy with knowledge of its existence and purposes, they could be held liable for all torts committed in furtherance of the conspiracy, or the "common design," even though those torts were committed before July 29, 1992.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

Decided December 4, 1995 — 

*Erwin A. Friedman*, for appellant.

*Savage & Turner, Brent J. Savage, Robert B. Turner,* for appellees.