A00A1294. JOHNS et al. v. RIDLEY et al.
A00A1295. HEARD COUNTY DEPARTMENT OF FAMILY &
CHILDREN SERVICES v. JOHNS et al.

(537 SE2d 746)

JOHNSON, Chief Judge.

Jane Johns worked for Heard County Department of Family & Children Services ("DFCS") as a child protective services worker. She claims that from May 1994 to June 1995 she was harassed by Jere Ridley, her supervisor at DFCS, resulting in claims of libel, slander, intentional infliction of emotional distress and invasion of privacy. Her husband, Thomas Johns, alleges he suffered a loss of consortium and intentional infliction of emotional distress. Both these appeals stem from the trial court's order granting summary judgment to Ridley and partial summary judgment to DFCS.

### Case No. A00A1294

In *Johns v. Ridley*, Jane and Thomas Johns appeal the trial court's grant of summary judgment to Ridley. At issue is whether Ridley is immune from liability under OCGA § 50-21-25 (a), which holds that a state employee who commits a tort while acting within his official duties or employment is not subject to lawsuit or liability therefor. Jane Johns claims that Ridley should be individually liable because he acted with actual malice or with an intent to cause injury in the performance of his official functions. Other issues include whether the trial court erred in finding Jane Johns' claim for invasion of privacy should be dismissed and whether the trial court erred in finding that Thomas Johns does not have a direct claim against Ridley.

1. Jane Johns claims the trial court erred in finding that statutory immunity barred all claims against Ridley individually. We agree.

OCGA § 50-21-25 (a) provides:

This article constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor. However, nothing in this article shall be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment.

The trial court found that Ridley's conduct fell within the scope of his employment and, therefore, Johns' suit against him was barred by

statutory immunity. Johns apparently concedes that Ridley's conduct fell within his scope of employment since she does not allege this finding as error on appeal. However, Johns argues that the trial court erred in applying statutory immunity because Ridley acted with actual malice or with actual intent to cause injury in the performance of his official functions.

The 1991 amendment to the Georgia Constitution provides that state officers and employees "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions."[1] In the context of official immunity, actual malice means a deliberate intention to do a wrongful act, and such an act may be accomplished with or without ill will and whether or not injury was intended.[2]

On Ridley's motion for summary judgment, we must construe the evidence in favor of Johns and her husband; Johns and her husband are given the benefit of all doubts and all reasonable inferences therefrom are indulged in their favor.[3] The burden is on Ridley to show that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law.[4] Since Ridley has failed to meet this burden, the grant of summary judgment based on statutory immunity was error.

The 13-month course of conduct to which Jane Johns attests establishes that Ridley may have acted with actual malice or with actual intent to cause injury in the performance of his official functions as Director of DFCS and Johns' supervisor. For example, the evidence shows that when Johns told Ridley she was going to call personnel and report his conduct, Ridley physically threatened her when he stood up, leaned over the desk and drew back his fist as if to hit her. Johns also claims Ridley called her to his office and told her he had killed a dog and stuffed it in the owner's mailbox because the owner had made him mad. He then reminded Johns that he knew where she lived. Ridley was aware from multiple photographs on Johns' desk that she had a pet dog. Ridley later called Johns into his office and told her, "you screw me in the back again, I'll get you and you won't even know what happened." Johns further describes a number of other deliberate actions taken by Ridley over the 13-month period in an effort to force Johns to quit.

Whether this evidence is credible or rises to the level of actual

---

[1] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); see also *Adams v. Hazelwood*, 271 Ga. 414 (1) (520 SE2d 896) (1999).

[2] Id. at 415 (2).

[3] *Fincher v. State of Ga.*, 231 Ga. App. 49, 50 (497 SE2d 632) (1998); *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993).

[4] *Fincher*, supra; *Moore*, supra.

malice or actual intent to harm is for a jury to decide.[5] Jane Johns' complaint and affidavit allege a number of deliberate actions taken by Ridley and assert that Ridley's conduct has been with actual malice and with actual intent to cause injury, including mental and physical distress, loss of enjoyment of life, and loss of her employment. The intention with which an act is done is peculiarly a question for the jury, and proof of actual malice does not readily lend itself to summary disposition.[6] Since the evidence, construed in favor of Johns, presents facts from which a rational trier of fact could find the existence of actual malice or actual intent to injure, the trial court erred in granting summary judgment to Ridley.

2. The trial court did not err in finding that Jane Johns' claims for invasion of privacy should be dismissed. An invasion of privacy must fall within one of the following four categories: (1) intrusion upon Johns' seclusion or solitude, or into her private affairs; (2) public disclosure of embarrassing facts about Johns; (3) publicity which places Johns in a false light in the public eye or (4) appropriation of Johns' name or likeness for Ridley's advantage.[7] Jane Johns' claims for invasion of privacy are based upon Ridley's alleged intrusion upon her seclusion, solitude and private affairs, specifically her marital relationship and bond.

With regard to this type of invasion of privacy, the Supreme Court has held that the "unreasonable intrusion" aspect involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns.[8] We agree with the trial court's determination that Jane Johns' allegations do not constitute an unreasonable intrusion which would support a claim of an invasion of privacy.

Johns worked as a DFCS child protective services supervisor. As part of her job, she wore a pager and was on call twenty-four hours a day, seven days a week for the caseworkers working under her, her supervisor and the various police agencies. Johns' affidavit alleges Ridley contacted her at her home on a number of occasions. However, she does not allege that any of these conversations involved a discussion of personal or private matters, or matters unrelated to her employment. Johns' husband spoke with Ridley only one time to tell him that he did not wish to speak with Ridley. Calling Johns at home about work-related matters does not rise to the level of an unreasonable intrusion upon her seclusion or solitude, or into her private affairs. Although Ridley's conduct as a whole may rise to the level of

[5] See *Hodges v. Youmans*, 122 Ga. App. 487, 489-493 (2) (177 SE2d 577) (1970).

[6] See *Barber v. Perdue*, 194 Ga. App. 287, 289 (390 SE2d 234) (1990).

[7] *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 704-705 (409 SE2d 835) (1991).

[8] Id. at 705.

intentional infliction of emotional distress, Jane Johns' affidavit simply does not support a cognizable claim for invasion of privacy.[9]

3. The trial court did not err in finding that Thomas Johns does not have a direct claim against Ridley. Thomas Johns' testimony is that Ridley intentionally inflicted emotional distress upon him by harassing his wife. He testified to no act committed upon him personally. In fact, Thomas Johns' only direct contact with Ridley was initiated by Thomas Johns, when he attempted to send dead flowers to Ridley's office. None of the conduct allegedly committed by Ridley was committed against Thomas Johns or in his presence. Thus, the record is devoid of any evidence establishing a direct claim against Ridley for either intentional infliction of emotional distress or invasion of privacy.[10]

Likewise, the record is devoid of any evidence establishing that Thomas Johns has a direct cause of action against DFCS for either intentional infliction of emotional distress or invasion of privacy. Thomas Johns' only contact with a representative of DFCS was a meeting he had with a Department of Human Resources' employee where he discussed the situation between his wife and Ridley. The employee promised to look into the matter. Based on the evidence in the record, Thomas Johns' only possible claim is a derivative loss of consortium claim, and the trial court properly granted Ridley's and DFCS's motions for summary judgment on any independent claim alleged by Thomas Johns.

## Case No. A00A1295

In *Dept. of Family &c. Svcs. v. Johns,* DFCS appeals from the trial court's grant of *partial* summary judgment to DFCS, claiming it was entitled to summary judgment on all grounds. While the trial court dismissed a number of Jane and Thomas Johns' claims, it left pending Jane Johns' claim for intentional infliction of emotional distress, Thomas Johns' claim for loss of consortium, and a claim for attorney fees. DFCS argues on appeal that summary judgment should have been granted in its favor on all claims.

4. DFCS first claims that the trial court erred in denying its motion for summary judgment with regard to Jane Johns' claim for intentional infliction of emotional distress. Because sufficient evidence exists for a jury to find intentional infliction of emotional distress by DFCS based on the alleged conduct of its employee Ridley

---

[9] Id. at 705-706.

[10] See generally *Sanders v. Brown,* 178 Ga. App. 447, 448-451 (1) (343 SE2d 722) (1986) (a party is not entitled to recover for intentional infliction of emotional distress *resulting* from having witnessed another party's intentional infliction of emotional distress).

over the 13-month period, we find the trial court did not err in deny-ing DFCS's motion for summary judgment on this ground.

We find no merit in DFCS's argument that it cannot be vicari-ously liable for any intentional harassment by Ridley because DFCS did not ratify Ridley's conduct.[11] Liability in this case is not predi-cated on vicarious liability, but on OCGA § 50-21-23, regarding the state's waiver of sovereign immunity "for the torts of state officers and employees while acting within the scope of their official duties or employment."

To establish a claim of intentional infliction of emotional dis-tress, Jane Johns must show that (a) through its employee Ridley, DFCS's conduct was intentional or reckless, (b) the conduct was extreme and outrageous, (c) there is a causal connection between the wrongful conduct and the emotional distress and (d) the emotional distress was severe.[12] The conduct must be "so outrageous in charac-ter, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[13] Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other triviali-ties; individuals are "expected and required to be hardened to a cer-tain amount of rough language, and to occasional acts that are defi-nitely inconsiderate and unkind."[14]

Jane Johns' affidavit alleges a course of conduct committed by Ridley consisting of 36 separate occurrences of harassment. The con-duct began around May 5, 1994, and terminated around June or July 1995. Neither Ridley nor DFCS disputed that the alleged course of conduct occurred. Contrary to DFCS's assertion, Johns' claims of har-assment are not 36 separate occurrences of intentional infliction of emotional distress. It is only when all the incidents of harassment occurring over the 13-month period are considered together that Johns' claim for intentional infliction of emotional distress arises. Thus, DFCS's argument that these claims are barred because some of the incidents occurred outside the 12-month period before Johns filed her notice of claim is without merit.

The trial court noted four indications of outrageousness: (a) the length and continuity of Ridley's alleged course of conduct; (b) the intent behind the conduct, specifically Ridley's intent to "punish"

[11] See *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636 (484 SE2d 659) (1997); *Trimble v. Circuit City Stores*, 220 Ga. App. 498 (469 SE2d 776) (1996).

[12] *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227 (335 SE2d 445) (1985).

[13] (Punctuation omitted.) *Yarbrough v. SAS Systems*, 204 Ga. App. 428, 429 (3) (419 SE2d 507) (1992).

[14] (Punctuation omitted.) *Moses v. Prudential Ins. Co. &c.*, 187 Ga. App. 222, 225 (369 SE2d 541) (1988); *Jenkins v. Gen. Hosp. of Humana*, 196 Ga. App. 150, 152 (395 SE2d 396) (1990).

Johns; (c) the position of authority and control Ridley held over Johns[15] and (d) the specific instances of harassment involving Ridley's veiled threat to kill Johns' dog and stuff it in her mailbox and his act of standing up, leaning over her desk and drawing back his fist as if to hit her. Viewing the 13-month period as a whole, including the two specific incidents cited above, the trial court did not err in denying DFCS's motion for summary judgment as to Johns' claim for intentional infliction of emotional distress. "[R]easonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress."[16]

5. DFCS next argues that even if Jane Johns has a viable claim for intentional infliction of emotional distress, her claim is barred by her failure to comply with OCGA § 50-21-26, requiring notice of a claim against a state department. According to DFCS, Johns' notice was insufficient because it failed to name any act or omission on the part of DFCS or allege that DFCS condoned Ridley's behavior. We find that Johns complied with the provisions in OCGA § 50-21-26.

Johns' ante litem notice reads: "This letter is notice of a claim against the Department and the State of Georgia, pursuant to O.C.G.A. § 50-21-26, on behalf of Mr. and Mrs. Johns. Mr. and Mrs. Johns's claims are against Mr. Jere Ridley, individually, and in his official position as Director of the Department." The letter states where the actions of Ridley occurred, describes the actions of Ridley and notes the damages suffered by Jane and Thomas Johns. "Department" is defined in the notice as the Heard County Department of Family & Children Services.

This notice complies with the requirements of OCGA § 50-21-26. Moreover, as we stated in Division 4, this notice was timely; it was filed one month after the alleged period of harassment ceased.

6. DFCS alleges that the trial court erred in failing to grant summary judgment as to Jane and Thomas Johns' claim for attorney fees. DFCS first argues that since OCGA § 50-21-23 does not specifically provide for the recovery of attorney fees, the state is immune from suit for such a claim. However, this Court has repeatedly held that such a ruling "would create judicially an expanded immunity which the legislature and the voting populace have not chosen to confer on governmental entities."[17] OCGA § 13-6-11 does not state a cause of action, but merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of

---

[15] See *Bridges*, supra at 230 (1) ("the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that might otherwise not exist").

[16] *Yarbray*, supra at 706 (2).

[17] *Eastern Air Lines v. Fulton County*, 183 Ga. App. 891, 895 (4) (360 SE2d 425) (1987).

damages. Therefore, no separate statutory waiver of immunity is required to allow the recovery of such damages against a governmental entity.[18] Accordingly, Jane and Thomas Johns are entitled to recover attorney fees if they can establish the grounds set out in OCGA § 13-6-11.

DFCS also argues that Jane and Thomas Johns are not entitled to attorney fees because their argument in favor of attorney fees evidences that these fees are sought to punish and deter DFCS, and OCGA § 50-21-30 does not allow punitive or exemplary damages against the state. While the Johnses' argument in support of attorney fees may contain an element of bad faith, the fact is they may be entitled to OCGA § 13-6-11 expenses of litigation as an additional element of their damages. Contrary to DFCS's assertion, it is well established that attorney fees are not exemplary damages.[19] Although they may often have a punitive effect on the party against whom they are awarded, the purpose of attorney fees is not to punish or penalize; it is to compensate an injured party for costs incurred as a result of the necessity of seeking legal redress for legitimate grievances.[20]

DFCS further maintains that the denial of summary judgment as to the attorney fees issue was error because (1) the Johnses' notice of claim did not include a claim for attorney fees, and they are, therefore, barred from bringing this claim under OCGA § 50-21-26 (a); and (2) there are no grounds for an award of attorney fees in this case because some of the Johnses' claims have been dismissed by the trial court, and therefore, a bona fide controversy existed. DFCS did not raise these arguments in its motion for summary judgment. In the trial court, DFCS argued that the Johnses were not entitled to attorney fees because attorney fees constituted exemplary damages. In denying DFCS's motion for summary judgment on the issue of attorney fees, the trial court found that the claim for attorney fees was not barred by sovereign immunity. The trial court never addressed or considered DFCS's present contention that the claim for attorney fees fails as a matter of law. "Where a trial court does not rule on an issue, it remains outside the jurisdiction of this Court and we cannot consider it."[21]

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

---

[18] *Waters v. Glynn County*, 237 Ga. App. 438, 440 (3) (514 SE2d 680) (1999).
[19] *City of Warner Robins v. Holt*, 220 Ga. App. 794 (470 SE2d 238) (1996); *Dept. of Transp. v. Fru-Con Constr. Corp.*, 206 Ga. App. 821, 826 (5) (426 SE2d 905) (1992).
[20] Id.
[21] *Waters*, supra at 441 (4).

DECIDED JULY 21, 2000 —
RECONSIDERATIONS DENIED AUGUST 15, 2000 AND
AUGUST 30, 2000 

*David C. Moss*, for appellants.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Kimberly L. Schwartz, Assistant Attorney General*, for appellees.