A01A0618, A01A0619. ASSOCIATION SERVICES, INC. v. SMITH; and vice versa.
A01A0620, A01A0621. ASSOCIATION SERVICES, INC. v. PIERCE; and vice versa.
(549 SE2d 454)

MIKELL, Judge.

This case involves four related appeals. Bobbie Smith and Joann Pierce filed separate actions against Association Services, Inc. ("ASI"), John Bullock & Company Southeast, Inc. ("Bullock"), and Michael Littleton, each asserting the following causes of action: (1) intrusion upon seclusion or solitude; (2) false light invasion of privacy; (3) defamation and conspiracy to commit defamation; (4) conspiracy to invade privacy; (5) conspiracy to commit criminal conduct; and (6) Georgia Racketeer Influenced & Corrupt Organizations Act (RICO) violations. Smith subsequently dismissed her defamation and RICO claims, and Pierce dismissed her RICO claim. ASI filed motions for summary judgment in both cases. With respect to Smith's action, the trial court denied the motion as to the claims of intrusion upon seclusion and conspiracy to violate privacy and granted summary judgment in favor of ASI on Smith's remaining claims. Likewise, in Pierce's action, the trial court denied the motion as to the claims of intrusion upon seclusion and conspiracy to violate privacy and granted summary judgment in favor of ASI on Pierce's remaining claims. The court signed certificates of immediate review in both cases, and we granted the applications for interlocutory appeal. ASI appeals the partial denial of its motions for summary judgment, and Smith and Pierce each appeal the partial grants of summary judgment in their respective cases. For reasons explained below, we affirm.

---

[13] See *Bright v. State,* 265 Ga. 265, 279 (5) (a) (455 SE2d 37) (1995).

Both actions share an underlying factual basis, and we will briefly summarize the evidence and then address the errors enumerated in the four related appeals. As a preliminary matter, we note that

> summary judgment is proper when there is no genuine issue of material fact[,] and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant[s].

*Smith v. Persichetti*, 245 Ga. App. 357 (537 SE2d 441) (2000).

So viewed, the record shows that on February 24, 1997, Pierce injured her ankle while working for Pierce Poured Walls, Inc. ("PPW"), a company that she owned with her husband. The couple operated PPW out of a retail store they owned, Southeastern Ornamental, where Pierce worked as a sales clerk. Smith is Pierce's sister and was also employed by Southeastern Ornamental. Pierce handled the payroll for PPW, and, on the morning of February 24, she left the store to retrieve some paperwork from her home. She fell and broke her left ankle on the steps in front of her home.

As a result of her injury, Pierce filed a workers' compensation claim. At the time of the claim, PCA Solutions was the third-party workers' compensation claim administrator for PPW, pursuant to an agreement with PPW's insurer, the Home Builders Association of Georgia Mutual Insurance Company ("Home Builders"). PCA Solutions began paying benefits to Pierce.

Appellant ASI was formed by Home Builders on June 1, 1997, to function as its workers' compensation claims administrator. All claims involving the members of Home Builders, including PPW, were transferred from PCA Solutions to ASI. Therefore, on June 1, 1997, ASI became the administrator handling Pierce's claim.

Prior to the formation of ASI, on May 8, 1997, PCA Solutions hired a private investigation firm, Bullock, to conduct an "activities check" on Pierce. A notation in Pierce's claim file indicated that PCA Solutions was concerned because Pierce was an owner and corporate officer of PPW. Additionally, Pierce claimed that she was completely disabled; however, she answered the PPW business telephone on May 8, 1997, and indicated to a representative of PCA Solutions that she was able to perform clerical work and "walk some." Furthermore, there were conflicting reports from Pierce's physician, Dr. Maecenas Hendrix. One status report signed by Dr. Hendrix, dated April 22, 1997, indicated that Pierce was able to return to work as long as her

lifting and/or carrying was limited to ten to twenty-five pounds. However, a May 6, 1997 status report, also signed by Dr. Hendrix, provided that Pierce was unable to return to work at all until after her next appointment two weeks later.

In an effort to determine whether Pierce was, in fact, able to work, Littleton, an investigator employed by Bullock, conducted surveillance of Pierce's home and workplace on three days in May and on June 7, 1997. On May 14, Littleton videotaped a woman fitting Pierce's description walking around Southeastern Ornamental's property, watering plants and filling birdbaths, showing no sign of injury. Littleton believed that the woman on the tape was Pierce; however, he had mistakenly videotaped Smith, who also worked at Southeastern Ornamental and is similar in appearance to Pierce.

When ASI took over administration of the Pierce claim on June 1, 1997, Tracy Nolton was assigned to work on the file. After viewing the tape and believing that it showed Pierce engaged in physical activity, Nolton sent the tape to ASI's attorney, Kevin Carlock.

Carlock sent a letter and a copy of the tape to Dr. Hendrix seeking his professional opinion as to Pierce's ability to work. In an affidavit, Carlock stated that rather than suspend Pierce's benefits in reliance on the investigator's report that Pierce was functioning in a manner inconsistent with her claimed injuries, his firm notified Pierce's husband, Ansley Pierce, of Littleton's observation. After Mr. Pierce disputed the investigator's report, ASI continued to pay benefits to Pierce and scheduled a meeting where the tape could be viewed by the Pierces and Smith.

The meeting was held on or about July 17, 1997, in a conference room at Callaway Gardens Inn. Littleton and another investigator, Dan Nelson, were present, along with the Pierces. Smith did not attend the meeting. The videotape was played one time in the conference room, without sound. Littleton deposed that he could not be certain whether the woman in the video was Pierce, even after meeting her.

A second meeting was held on August 29, 1997, at the office of Pierce's attorney and was attended by the Pierces, Smith, Nolton, Carlock, Littleton, and Nelson. After viewing the tape in the presence of Pierce and Smith, Carlock acknowledged that the person in the video was in fact Smith. ASI withdrew its motion for a hearing to cease benefits and paid Pierce's attorney fees incurred in connection with the disputed claim for benefits.

### Case No. A01A0618

On appeal, ASI assigns error to the court's partial denial of its motion for summary judgment as to Smith's claims of intrusion upon

seclusion and conspiracy to invade privacy. We disagree and affirm the court's ruling.

1. Initially, ASI contends that the torts alleged by Smith were committed, if at all, by PCA Solutions; therefore, ASI cannot be held liable because it did not exist until June 1, 1997, after much of the surveillance at issue had been performed. However, because ASI did not raise this argument in its motion for summary judgment, it is deemed waived. "Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court." (Citations omitted.) *Nairon v. Land*, 242 Ga. App. 259, 261 (3) (529 SE2d 390) (2000).

2. Next, ASI argues that the court should have granted summary judgment on Smith's intrusion upon seclusion claim because she was unable to establish a prima facie case.

The tort of intrusion upon seclusion or solitude is one of the four categories of invasion of privacy claims. *Johns v. Ridley*, 245 Ga. App. 710, 712 (2) (537 SE2d 746) (2000); *Cabaniss v. Hipsley*, 114 Ga. App. 367, 370 (151 SE2d 496) (1966). "With regard to this type of invasion of privacy, the Supreme Court has held that the 'unreasonable intrusion' aspect involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns." *Johns*, supra, citing *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 704-705 (409 SE2d 835) (1991). In order to recover for intrusion upon seclusion, Smith must demonstrate that she was subjected to a " 'physical intrusion analogous to a trespass.' " *Davis v. Emmis Publishing Corp.*, 244 Ga. App. 795, 797 (2) (536 SE2d 809) (2000), citing *Cox Communications v. Lowe*, 173 Ga. App. 812, 814 (2) (328 SE2d 384) (1985).

Smith contends that there is, at minimum, a jury issue as to whether ASI and its investigators trespassed on private property during the course of the investigation. Littleton deposed that he did not go onto the Pierces' private property when he conducted surveillance of their home while Smith was a visitor there; however, Mr. Pierce testified that it would have been impossible for Littleton to have recorded the events he claimed to have witnessed without trespassing. Furthermore, there is conflicting evidence in the record regarding whether Littleton trespassed on the property of Smith's workplace, Southeastern Ornamental. Additionally, Littleton admitted placing at least seven "pretext" telephone calls to Smith's workplace.

We conclude that a genuine issue of material fact remains as to whether the investigators' conduct constituted an unreasonable

intrusion into Smith's seclusion and private affairs. Accordingly, the trial court properly denied ASI's motion for summary judgment as to this claim.

3. ASI contends that the court erred in denying its motion for summary judgment on Smith's claim of conspiracy to invade her privacy. Essentially, ASI argues that it has not invaded her privacy through intrusion upon seclusion; therefore, the conspiracy claim cannot survive. See *Savannah College of Art &c. v. School of Visual Arts of Savannah*, 219 Ga. App. 296 (464 SE2d 895) (1995).

We held in Division 2 that a jury issue exists as to whether the defendants committed the tort of invasion of privacy (intrusion upon seclusion). There is evidence that if the investigators did unreasonably intrude upon Smith's seclusion, their conduct was the result of requests by PCA Solutions and ASI. Therefore, the court did not err in concluding that a jury question exists as to Smith's conspiracy claim.

## Case No. A01A0619

4. In her cross-appeal, Smith contends that the court erred in granting ASI's motion for summary judgment as to her claim for false light invasion of privacy. We disagree.

"[P]ublicity which places the plaintiff in a false light in the public eye" is another of the four torts that make up the general tort of invasion of privacy. *Cabaniss*, supra at 370. See also *Johns*, supra at 712. In a false light case, "[t]he interest protected is clearly that of reputation, with the same overtones of mental distress as in defamation." (Citation and punctuation omitted.) *Cabaniss*, supra at 375 (3). Essentially, to establish a claim of false light, a plaintiff must establish the existence of false publicity that "depicts the plaintiff as something or someone which [she] is not." (Citations and punctuation omitted.) *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 689-690 (3) (500 SE2d 1) (1998). Next, the plaintiff must demonstrate that "the false light in which [she] was placed would be highly offensive to a reasonable person." (Citation and punctuation omitted.) *Thomason v. Times-Journal*, 190 Ga. App. 601, 604 (4) (379 SE2d 551) (1989) ("the hypersensitive individual will not be protected") (citation and punctuation omitted). See also *Brewer v. Rogers*, 211 Ga. App. 343, 350 (3) (439 SE2d 77) (1993).

Smith argues that she was depicted in a false light by the videotape made by Littleton, who mistakenly believed he was observing Pierce. Contrary to Smith's argument, however, we conclude that the undisputed evidence precludes her recovery on this claim.

First, Smith has not been placed in the public eye by ASI. Even though the tape was played in a conference room at Callaway Gar-

dens Inn, there is no evidence that any members of the general public saw the tape or even were aware of it. Furthermore, although the tape was sent to Dr. Hendrix, he did not recall viewing it. The investigators and the representatives of ASI viewed the tape in connection with their investigation of Pierce's claim. Unlike cases in which a plaintiff is falsely depicted in a televised newscast or in published materials, the case sub judice is devoid of any evidence of publicity. See, e.g., *Zarach*, supra at 687; *Brewer*, supra at 343-344.

Even assuming, arguendo, that the depiction of Smith in the videotape did publicly place her in a false light, we cannot conclude that the false light in which Smith was placed would be "highly offensive to a reasonable person." See *Brewer*, supra at 350 (3). Any false depiction was merely the result of Littleton mistakenly recording Smith instead of Pierce. In *Thomason*, supra, we held that a newspaper's publication of a false obituary did not satisfy the "offensiveness" element. Likewise, in this case we do not find that the videotape of Smith would be "offensive and objectionable to a reasonable person of ordinary sensitivities." Id. Accordingly, the trial court did not err in granting ASI's motion for summary judgment as to Smith's claim of false light invasion of privacy.

5. Smith's argument that the court erred in granting ASI's motion for summary judgment on her claim of conspiracy to commit criminal conduct is without merit. Smith alleges that ASI conspired with other parties to violate OCGA §§ 16-7-21 (criminal trespass) and 16-11-62 (3), which prohibits a person from "go[ing] on or about the premises of another or any private place . . . for the purpose of invading the privacy of others by eavesdropping upon their conversations or secretly observing their activities."

It is well settled that a plaintiff cannot maintain an action for a conspiracy in the absence of underlying actionable conduct.

> A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. . . . Where civil liability for a conspiracy is sought to be imposed, the conspiracy of itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done.

(Citations and punctuation omitted.) *First Fed. Sav. Bank v. Hart*, 185 Ga. App. 304, 305 (2) (363 SE2d 832) (1987). See also *Rose v. Zurowski*, 236 Ga. App. 157-158 (1) (511 SE2d 265) (1999).

The trial court found that Smith's claim of conspiracy to commit criminal conduct failed as a matter of law, and we see no basis for reversal. A civil conspiracy claim for damages requires a showing

that two or more persons have engaged in conduct which constitutes a tort. *Savannah College of Art*, supra at 297. The criminal violations Smith alleges against ASI are not actionable for damages and cannot form the basis of a civil conspiracy claim. Rather, Smith's claims of intrusion upon seclusion and conspiracy to commit the tort of invasion of privacy survived summary judgment and provide the appropriate avenue to seek damages for the wrongs alleged. Accordingly, the trial court's grant of summary judgment on this claim is affirmed.

## Case No. A01A0620

6. In a related appeal, ASI challenges the trial court's partial denial of its motion for summary judgment in Pierce's action. ASI again argues that it did not exist until June 1, 1997, and, therefore, cannot be held liable for conduct prior to that date.

We held above in Division 1 of Case No. A01A0618 that ASI's failure to raise this argument in its motion for summary judgment in that case precludes our consideration of it on appeal. *Nairon*, supra at 261 (3) ("One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court."). Again, ASI failed to raise this argument in its motion for summary judgment in this case; therefore, it presents nothing for our review.

Furthermore, even if we were able to consider ASI's argument, it would likely fail. ASI's answer to the complaint contradicts its present argument, when it states: "Defendant admits commencement of benefits and medical expenses to Plaintiff as required by the Georgia Workers' Compensation Act due to Plaintiff's disabling work related injury." Additionally, Nolton's testimony indicates that many of ASI's employees came from PCA Solutions, and that ASI occupied the same offices as PCA Solutions. Accordingly, there is at least some evidence in the record from which a jury could conclude that ASI and PCA Solutions were the same entity. Finally, even if ASI did not exist before June 1, 1997, Pierce's claims extend to conduct that took place after that date.

7. Next, ASI contends that the court erred in denying its motion for summary judgment as to Pierce's claim of intrusion upon seclusion, because she was unable to establish a prima facie case for that cause of action. We disagree.

As a preliminary matter, we reject ASI's contention that the trial court erred in denying ASI's motion to strike the affidavit of Ansley Pierce. The affidavit testimony of Mr. Pierce provides facts and opinions regarding his property and what would be visible on the property from different distances and angles. We conclude that the court

did not abuse its discretion in considering the affidavit. "[A]ffidavits may be considered even if conclusions are intermingled with facts." *Willig v. Shellnut*, 224 Ga. App. 530, 533 (3) (480 SE2d 924) (1997). See also *Keene v. Herstam*, 225 Ga. App. 115, 117 (1) (483 SE2d 335) (1997) ("[S]elf-serving does not equate with conclusory when the statements contained in an affidavit are supported . . . by substantiating fact[s] and circumstances.").

We held above in Case No. A01A0618, Division 2, that the trial court properly denied ASI's motion for summary judgment on Smith's claim of intrusion upon seclusion, and we reach the same result regarding Pierce's claim, which is based on the same evidence. As a result of conflicting evidence in the record, we conclude that a genuine issue of material fact remains as to whether the investigators' conduct constituted an unreasonable intrusion upon Pierce's seclusion. Taking into consideration the affidavit testimony of Mr. Pierce, there is at least a jury issue as to whether his wife was subjected to a " 'physical intrusion analogous to a trespass' " by the investigators, acting at the request of PCA Solutions and ASI. *Davis*, supra at 797 (2). Specifically, Littleton denied that he entered the Pierces' private property when he conducted surveillance of their home. However, he was able to record the exact tag numbers of three vehicles parked at the Pierce residence, as well as other observations. Mr. Pierce testified that it would have been impossible for Littleton to have recorded the events he claimed to have witnessed without trespassing.

ASI argues that the investigation was reasonable and therefore did not constitute an actionable intrusion upon Pierce's seclusion. See *Ellenberg v. Pinkerton's, Inc.*, 130 Ga. App. 254, 256-257 (202 SE2d 701) (1973). Compare *Pinkerton Nat. Detective Agency v. Stevens*, 108 Ga. App. 159 (132 SE2d 119) (1963). However, we agree with the trial court that the issue of whether the investigators' conduct amounted to an intrusion upon Pierce's seclusion should be decided by a jury. Unlike in *Ellenberg*, supra, where the investigator conducted surveillance from public roads, in the case sub judice, there is at least some evidence that the investigators trespassed on the Pierces' private property during their surveillance of the residence. After hearing the evidence, a jury may very well conclude that the investigators' conduct was reasonable and did not constitute an intrusion upon Pierce's seclusion; however, because there is conflicting evidence, that determination is for a jury to make, and summary judgment is inappropriate. OCGA § 9-11-56 (c).

8. As in the Smith case, ASI contends here that the court erred in denying summary judgment as to Pierce's claim of conspiracy to invade privacy. Again, ASI argues that it has not committed the underlying tort of invasion of privacy, and, thus, the conspiracy claim

cannot stand. However, as we held in Case No. A01A0618, Division 3, because there are jury issues regarding whether the investigators committed the tort of intrusion upon seclusion and whether they were acting in concert with ASI, summary judgment is not appropriate on the conspiracy claim. The question of whether a conspiracy existed should be decided by a jury. See *McLane v. Atlanta Market Center Mgmt. Co.*, 225 Ga. App. 818, 826 (4) (b) (486 SE2d 30) (1997) ("Because civil conspiracy is by its very nature a secret endeavor, . . . concert of action, amounting to conspiracy, is best suited for jury resolution. . . . [Cit.]"), rev'd on other grounds, 269 Ga. 604 (503 SE2d 278) (1998). The trial court properly denied the motion as to this claim.

### Case No. A01A0621

In her cross-appeal, Pierce contends that the trial court erred by granting ASI's motion for summary judgment as to her claims of false light invasion of privacy, defamation, conspiracy to commit defamation, and conspiracy to violate a criminal statute. We find no error and affirm the trial court's judgment.

9. With regard to Pierce's claim of false light invasion of privacy, we conclude that the undisputed evidence precludes her recovery on this claim. As we noted in Division 4, Case No. A01A0619, false light is one of the four torts that make up the general tort of invasion of privacy. *Cabaniss*, supra at 370. In order to recover, a plaintiff must establish the existence of false publicity that "depicts [her] as something or someone which [she] is not." (Citations and punctuation omitted.) *Zarach*, supra at 689-690 (3). Additionally, the plaintiff must demonstrate that the false depiction would be highly offensive to a reasonable person. *Thomason*, supra at 604.

Pierce argues that she was falsely depicted in the videotape as someone who was misrepresenting her injuries and as her sister, Smith. However, even assuming, arguendo, that Pierce was placed in a false light by the video, she cannot establish the elements of publicity or that the false depiction would be highly offensive to a reasonable person. First, there is no evidence in the record that a member of the public viewed the tape or was led to believe in any way that it was Pierce, rather than Smith, depicted on the tape. The only people who saw the tape were the investigators, the representatives of ASI, the attorneys for the parties, the Pierces, Smith, and possibly Pierce's treating physician, Dr. Hendrix. Additionally, we cannot conclude that being mistaken for her sister during the course of an investigation into a claim for workers' compensation benefits would be "offensive and objectionable to a reasonable person of ordinary sensitivities." *Thomason*, supra.

10. We reject Pierce's argument that the court erred in granting summary judgment to ASI on her defamation claim. "A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing [her] to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). Likewise, "[s]lander or oral defamation consists in . . . [m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein; or [u]ttering any disparaging words productive of special damage which flows naturally therefrom." OCGA § 51-5-4 (a) (3), (4). Pierce alleges that she was subjected to libel and slander through the investigators' report stating that she was able to engage in activities which she was actually unable to do and through the videotape of Smith that the investigators and ASI falsely represented as a depiction of Pierce.

Even assuming, arguendo, that the report and videotape were otherwise defamatory, they are privileged communications under OCGA § 51-5-7 (2) and (3) and thus not actionable because they lack the element of publication. "Statements made in the good faith performance of a private duty, such as reports from an independent investigator to an insurance company, are privileged." *Willis v. United Family Life Ins.*, 226 Ga. App. 661, 664 (1) (b) (487 SE2d 376) (1997), citing *Haezebrouck v. State Farm &c. Ins. Co.*, 216 Ga. App. 809, 813 (455 SE2d 842) (1995). In *Auer v. Black*, 163 Ga. App. 787 (294 SE2d 616) (1982), a case involving a workers' compensation claim, we affirmed the grant of summary judgment to a doctor who reported to the plaintiff's employer that it was his "firm medical opinion that this patient is trying to defraud the Workmen's Compensation [Board] out of money." (Punctuation omitted.) We held that "[c]learly[,] the statements in the narrative report were made by the doctor in the performance of his duties, public and private, and were made to protect his own interest in the matter," and, accordingly, that the defense of privilege applied. Id. at 789.

Similarly, in the case sub judice, any communications made by ASI concerning the validity of Pierce's claim were made in performance of its private duty to its client, PPW, and to protect its own interest in the matter. Thus, the communications were privileged, and Pierce's claim for defamation cannot stand. OCGA § 51-5-7 (2), (3). The trial court did not err in granting ASI's motion for summary judgment on this claim.

11. Likewise, because Pierce's underlying defamation claim fails, she cannot maintain a cause of action for conspiracy to defame her. See *First Fed. Sav. Bank*, supra at 305 (2).

12. Finally, Pierce assigns error to the court's grant of summary judgment on her claim of conspiracy to commit criminal conduct. We addressed a similar issue above in Division 5, Case No. A01A0619,

where we held that the court did not err in granting summary judgment on Smith's identical claim. We reach the same result here. In order to impose civil liability for a conspiracy, a plaintiff must demonstrate that two or more persons acted in concert to commit a tort. *Savannah College of Art*, supra at 297. "The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." (Citations and punctuation omitted.) Id. As we noted above, Pierce's claims of intrusion upon seclusion and conspiracy to invade her privacy provide the appropriate avenue to seek damages for the alleged wrongful conduct.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MAY 16, 2001.

*Webb, Carlock, Copeland, Semler & Stair, David F. Root, Austin E. Carter, Deborah L. Arscott,* for appellant.

*Hatcher, Stubbs, Land, Hollis & Rothschild, William B. Hardegree, Alan G. Snipes, Billy E. Moore,* for appellees.