## A06A1752. ANDERSON v. MERGENHAGEN.
(642 SE2d 105)

BARNES, Chief Judge.

Maureen Anderson sued Paul Mergenhagen for stalking, invasion of privacy, and intentional infliction of emotional distress, seeking a restraining order, damages, and fees. After both parties moved for partial summary judgment, the trial court granted Mergenhagen's motion on the invasion of privacy and emotional distress claims, but set the injunction against stalking for a bench trial. Only Anderson appealed from the trial court's order, alleging the trial court erred in denying her motion for summary judgment on the stalking claim, in granting summary judgment to Mergenhagen on her invasion of privacy claim, and in granting Mergenhagen's motion to quash a subpoena. She did not appeal the trial court's grant of summary judgment to Mergenhagen on her emotional distress claim. For the reasons that follow, we affirm the trial court in its denial of summary judgment on the stalking claim and its grant of the motion to quash, but reverse the grant of summary judgment to Mergenhagen on Anderson's invasion of privacy claim.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001). Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

This dispute apparently arose from the campaign of an ex-wife (Karyn Anderson) and her new partner (appellee Mergenhagen) to

harass an ex-husband's second wife (appellant Maureen Anderson). The animus between the parties to this suit has its origins in the collapse of Dick Anderson's marriage. After his divorce from his first wife, Karyn Anderson, Dick Anderson learned that he was not the father of the two children born to the couple. Mergenhagen was seeing Karyn Anderson at this time. After Karyn began harassing Dick Anderson's second wife, Maureen Anderson, by driving a car toward her on four occasions, Maureen swore out a warrant for her arrest, after which time Karyn stopped harassing her. Maureen alleges that it was around this time that Mergenhagen began following her.

Though the parties' accounts of their contacts diverge widely in their details, Anderson contends that from early spring 2003 to mid-2005, Mergenhagen followed her on many occasions with increasing frequency, taking pictures, making obscene gestures, and otherwise letting her know he was there. She details at least 15 such occasions, beginning in June 2003, when Mergenhagen followed her in his car, sometimes taking pictures through his windshield, other times pulling alongside her car and taking pictures from his open window. She testified that these events left her frightened, disturbed, distracted, nervous, upset, shaken, and scared. She called the police several times to report that Mergenhagen was following her, and she became frightened all of the time and particularly feared that she would have an accident because he often distracted her while she was driving.

For example, on one occasion in July 2003, Anderson pulled onto Steeplechase Drive to take her children to the community pool when Mergenhagen began following her and taking pictures. Anderson passed the pool entrance and fled down a side road, but Mergenhagen followed her, slowing at each driveway. Anderson turned her car around, and as she drove past Mergenhagen, he rolled down his window to take more pictures, and began laughing. Anderson yelled for him to stop stalking her, and went home shaken, scared, and angry because she "just wanted to go to the pool."

On another occasion in November 2003, Anderson was walking in her neighborhood with her two small children when Mergenhagen drove up alongside them, rolled down his window, and began taking pictures of her. She cut her walk short and took her children home because she was afraid of him. These incidents occurred approximately monthly from June 2003 to July 2004, and several times afterward.

By his own account, Mergenhagen followed Anderson at least four times and took more than 30 pictures of her car. He admits that at least two of these encounters occurred after Anderson sent Mergenhagen a cease-and-desist letter in December 2003. Additionally,

the security guard at the entrance to the Andersons' subdivision gave undisputed testimony that Mergenhagen frequently lay in wait for Maureen's car outside the guard house, and that she was "visibly shaken and upset, almost to the point of tears," by one incident.

1. Anderson contends that the trial court erred in denying her motion for summary judgment on her stalking claim, arguing that the evidence clearly established that she was entitled to injunctive relief and fees.

Under OCGA § 16-5-90 (a) (1),

[a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . For the purpose of this article, the term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

Anderson sought relief under OCGA § 16-5-94 (a), which authorizes restraining and protective orders for the conduct prohibited by OCGA § 16-5-90.

"The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court." *Alexander Properties Group v. Doe*, 280 Ga. 306, 307 (1) (626 SE2d 497) (2006). We therefore will not reverse absent an abuse of that discretion. Id. "The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it." *Buchheit v. Stinson*, 260 Ga. App. 450, 453 (2) (579 SE2d 853) (2003). Finally, the standard for obtaining a stalking protective order is proof by a preponderance of the evidence. OCGA §§ 16-5-94 (e); 19-13-3 (c).

In this case, even though Mergenhagen admitted he had committed certain acts, he denied the intent required under the stalking statute. Thus we find no abuse of discretion when the trial court denied summary judgment to Anderson and set the case for a bench trial.

2. Anderson contends on appeal that the trial court erred when it granted Mergenhagen's motion for summary judgment on Anderson's invasion of privacy claim. We agree. As far back as 1905, our Supreme Court recognized a right to privacy.

> The right of privacy, or the right of the individual to be let alone, is a personal right, which is not without judicial recognition. It is the complement of the right to the immunity of one's person. The individual has always been entitled to be protected in the exclusive use and enjoyment of that which is his own. The common law regarded his person and property as inviolate, and he has the absolute right to be let alone. [Cit.] The principle is fundamental, and essential in organized society, that every one, in exercising a personal right and in the use of his property, shall respect the rights and properties of others.

(Punctuation omitted.) *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 213-214 (50 SE 68) (1905). In 1966, our court adopted the analysis of the tort of "invasion of privacy" as accepted at that time by a number of legal scholars, who had divided that right into four categories: "(1) [I]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; [and] (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Cabaniss v. Hipsley*, 114 Ga. App. 367, 370 (151 SE2d 496) (1966).

> [T]he right of privacy is embraced within the absolute rights of personal security and personal liberty, "to be let alone," to live a life of seclusion or to be free of unwarranted interference by the public about matters which the public is not necessarily concerned, or to be protected from any wrongful intrusion into an individual's private life which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Ga. Power Co. v. Busbin*, 149 Ga. App. 274, 277 (6) (254 SE2d 146) (1979).

With regard to the tort of intrusion upon seclusion or solitude, which is the claim made here, "the Supreme Court has held that the 'unreasonable intrusion' aspect involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns." *Johns v. Ridley*, 245 Ga. App. 710, 712 (2) (537 SE2d 746) (2000), citing *Yarbray v. Southern Bell Tel. &c. Co.*,

261 Ga. 703, 705 (409 SE2d 835) (1991). "Prior to *Yarbray*, the Georgia Court of Appeals held in several cases that, to state a claim under the 'unreasonable intrusion' tort, the plaintiff must allege a physical intrusion which is analogous to a trespass. See *Hines v. Columbus Bank and Trust Company*, 137 Ga. App. 268 (223 SE2d 468) (1976)." *Simon v. Morehouse School of Medicine*, 908 FSupp. 959, 973 (6) (a) (N.D. Ga. 1995).

The physical intrusion requirement arose for the first time in *Peacock v. Retail Credit Co.*, 302 FSupp. 418, 422 (N.D. Ga. 1969), aff'd, 429 F2d 31 (5th Cir. 1970), cert. denied, 401 U. S. 938 (91 SC 927, 28 LE2d 217) (1971). In that case, the plaintiff claimed that the publication of a false credit report constituted the invasion of his privacy by placing him in a false light; by making an unwarranted intrusion into his private affairs; and by making an unwarranted public disclosure of embarrassing private facts about him. The district court reviewed eight Georgia cases, and all of them happened to involve physical intrusions of one sort or another, such as an intrusion into a residence, a hotel room, a hospital room, and a ship stateroom. Id. at 422-423. Thus the district court concluded that the plaintiff had no privacy claim for intrusion into his private affairs because "the Georgia cases require that the intrusion must be physical, analogous to a trespass." Id. at 422.

Subsequent Georgia cases have quoted *Peacock*'s conclusion that "the intrusion must be physical, analogous to a trespass,"[1] but concurrent cases have recognized that this "physical" requirement can be met by showing that the defendant conducted surveillance on the plaintiff or otherwise monitored her activities.

> The tort of intrusion involves an unreasonable and highly offensive intrusion upon another's seclusion. Georgia courts have long recognized the form of invasion consisting of intrusion upon physical solitude or seclusion analogous to a trespass in plaintiff's home or other quarters, such as hospital or hotel rooms. Georgia courts have extended the principle beyond physical intrusion to include prying and intrusions into private concerns.

---

[1] See, e.g., *Assn. Svcs. v. Smith*, 249 Ga. App. 629, 632 (2) (549 SE2d 454) (2001); *Davis v. Emmis Publishing Corp.*, 244 Ga. App. 795, 797 (2) (536 SE2d 809) (2000); *Troncalli v. Jones*, 237 Ga. App. 10, 14, n. 3 (514 SE2d 478) (1999); *Jarrett v. Butts*, 190 Ga. App. 703, 704 (2) (379 SE2d 583) (1989); *Merz v. Professional Health Control*, 175 Ga. App. 110, 111 (3) (332 SE2d 333) (1985); *Cox Communications v. Lowe*, 173 Ga. App. 812, 814 (2) (328 SE2d 384) (1985) (physical precedent only); *Kobeck v. Nabisco*, 166 Ga. App. 652, 654 (2) (305 SE2d 183) (1983); *Williams v. Church's Fried Chicken*, 158 Ga. App. 26, 32 (5) (279 SE2d 465) (1981); *Hines v. Columbus Bank &c. Co.*, supra, 137 Ga. App. at 269.

(Citations omitted.) *Summers v. Bailey*, 55 F3d 1564, 1566 (11th Cir. 1995); accord *Pospicil v. Buying Office*, 71 FSupp.2d 1346, 1361 (N.D. Ga. 1999).

> [O]pen and repeated acts of surveillance were sufficient of themselves to publicly proclaim the plaintiff suspect and subject him to public disrepute so as to constitute "the analogue of libel." This petition does not limit the defendants' acts to that reasonable and unobtrusive observation which would ordinarily be used to catch one in normal activities unaware, but sets out a course of conduct beyond what would be sufficient for the purpose intended, and certainly one which would disturb an ordinary person without hypersensitive reactions.

*Pinkerton Nat. Detective Agency v. Stevens*, 108 Ga. App. 159, 168 (2) (c) (132 SE2d 119) (1963).

> Traditionally, watching or observing a person in a public place is not an intrusion upon one's privacy. However, Georgia courts have held that surveillance of an individual on public thoroughfares, where such surveillance aims to frighten or torment a person, is an unreasonable intrusion upon a person's privacy.

*Summers v. Bailey*, supra, 55 F3d at 1566.

In cases holding that public surveillance did not establish a privacy violation, we have found that the surveillance was reasonable in light of the situation. For example, reasonable surveillance of a residence from a public road to investigate a husband's disability claim constituted no intrusion upon his wife's seclusion or solitude, or into her private affairs. *Ellenberg v. Pinkerton's*, 130 Ga. App. 254, 256-257 (2) (202 SE2d 701) (1973). The surveillance of the husband at his house and on public roads also did not establish a privacy violation.

> Reasonable surveillance is recognized as a common method to obtain evidence to defend a lawsuit. It is only when such is conducted in a vicious or malicious manner not reasonably limited and designated to obtain information needed for the defense of a lawsuit or deliberately calculated to frighten or torment the plaintiff, that the courts will not countenance it.

Id. at 257 (3). Additionally, no privacy violation was established by a father's "watching, eavesdropping, and spying" of his children's

mother to determine her fitness for custody. *Bodrey v. Cape*, 120 Ga. App. 859 (172 SE2d 643) (1969). On the other hand, when a private investigator investigated a resident who was mistaken for another woman who had filed a workers' compensation claim, we held that "a genuine issue of material fact remains as to whether the investigators' conduct constituted an unreasonable intrusion into Smith's seclusion and private affairs." *Assn. Svcs. v. Smith*, 249 Ga. App. 629, 632-633 (2) (549 SE2d 454) (2001).

In this case, Anderson alleges that her privacy was violated when Mergenhagen followed her repeatedly in the car and took numerous photographs of her and her car. While the Restatement (Second) of Torts suggests that a driver may have no cause of action for mere observation or even for having her photograph taken, Restatement (Second) of Torts, § 652B, a relatively harmless activity can become tortious with repetition, as when, for example, telephone calls "are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff," and becoming "a substantial burden to his existence." Restatement (Second) of Torts, § 652B, Comments D, C. Similarly, repeatedly following a woman, who was pregnant for part of that time and was frequently alone or with her small children, photographing her at least 40 times, repeatedly causing her to become frightened and upset, to flee to her home, and to call the police seeking help, creates a jury question as to whether the defendant's actions amounted to "a course of hounding the plaintiff" that intruded upon her privacy.

We must therefore conclude that the trial court erred when it granted summary judgment to Mergenhagen on this claim. Georgia law does not require physical intrusion to establish a claim of invasion of privacy.

3. Finally, Anderson argues that the trial court erred when it granted Mergenhagen's motion to quash her subpoena of his cell phone records under OCGA § 9-11-34. Mergenhagen often photographed his own cell phone to record the time and place of his sightings of Anderson, and Anderson testified that she once saw Mergenhagen speaking on his cell phone while he was following her. Even if Mergenhagen was speaking to Karyn Anderson when he was following Maureen Anderson, this information is not relevant to the intrusiveness of his behavior. The trial court did not abuse its discretion when it quashed the subpoena, since it was not reasonably calculated to lead to the discovery of admissible evidence. OCGA § 24-10-22 (b) (1); compare *Price v. State*, 269 Ga. 222, 224 (2) (498 SE2d 262) (1998) (reversing quash of defendant's subpoena for gas chromatography printout recording his blood alcohol level).

For these reasons, we affirm the trial court's order in part and reverse it in part.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Bernes, J., concur.*

DECIDED JANUARY 17, 2007 —
RECONSIDERATIONS DENIED FEBRUARY 12, 2007 —

*David A. Webster, Donald A. Weissman,* for appellant.

*Jones, Jensen & Harris, Taylor W. Jones, Stacy M. Pineo,* for appellee.